Donald Lee MURPHY, Appellant,

v.

The STATE of Texas, Appellee.

No. 1169–86.

Court of Criminal Appeals of Texas, En Banc.

Feb. 15, 1989.

Catherine Greene Burnett, court appointed, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. & Winston E. Cochran, Jr. & J. Sidney Crowley, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellant was convicted by a jury of the offense of aggravated robbery. V.T.C.A. Penal Code, Sec. 29.03. The jury also assessed punishment at life imprisonment after the State proved appellant had two prior felony convictions as alleged in the indictment. The Court of Appeals affirmed appellant's conviction in an unpublished opinion. *Murphy v. State*, No. 01–85–0722–CR, delivered September 26, 1986) [1986 WL 10858]. Appellant then filed a petition for discretionary review with this Court which we granted to review the Court of Appeals' holding that the trial court was justified in finding that police officers "scrupulously honored" appellant's right to cut off questioning and therefore did not violate appellant's rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We will affirm.

The facts surrounding appellant's arrest and the taking of his confession were established in a hearing on appellant's motion to suppress his confession. The trial court overruled appellant's motion to suppress. Appellant was arrested by Houston police officers on September 3, 1984, on a warrant from Anderson County. Prior to appellant's arrest, the Houston police department had received information through Crime Stoppers that implicated appellant and his brother in a robbery-murder committed in Harris County. Sargeant S.A. Cain of the Houston police department testified at the hearing that upon receiving this information he ran a name check on appellant and discovered that he was wanted for an offense committed in Palestine, which is in Anderson County. Cain subsequently contacted the Palestine police department and was told that appellant had been charged with capital murder in Palestine.

Acting upon a tip as to appellant's whereabouts in Houston and knowing that appellant was wanted out of Palestine, Officer J.E. Foxworth picked up appellant "to speak to him about some information." Appellant initially told Foxworth that his name was Rivers, but appellant was not carrying any identification. After appellant agreed to get in Foxworth's patrol car to talk to him, he admitted to Foxworth that he was Donald Murphy, and Foxworth thereafter told him he was under arrest. Foxworth then took appellant to a police substation to verify that he was the same man that was wanted in Palestine. Upon verifying that, Foxworth called Sargeant Brian Foster in the Homicide Division, who advised Foxworth to bring appellant to the main police station. Foxworth did not recall reading appellant his *Miranda* rights.

Foster read appellant his *Miranda* rights when appellant arrived at the Houston police station. No charges, however, had been filed against appellant for the robbery-murder in Houston at the time of his arrest. Foster stated further that appellant did not request an attorney at that time and did not give him a statement. Appellant told Foster that "he had heard of [the robbery-murder in Houston] but he didn't see how he could help himself by talking to [Foster]." Since appellant did not wish to discuss anything with the Houston police and the Houston police did not have sufficient evidence to file charges against appellant for the robbery-murder, appellant was released to the Palestine police, who transferred appellant to the Anderson County Jail the following day, September 4, 1984.

Subsequently, the Houston police obtained a statement from one of appellant's co-defendants which implicated appellant in the offense in Houston. The Houston po-

lice did not have any further contact with appellant until September 19, 1984, when Cain, Sargeant A.T. Herman, and Officer M.L. Patterson went to Palestine to question appellant about the robbery-murder in Houston. The officers interviewed appellant in the Anderson County Jail at approximately 2:00 p.m. Prior to questioning appellant, Cain again read appellant his *Miranda* rights. Cain testified at the hearing that appellant told him "I know my rights" and appellant did not request the presence of an attorney. Cain testified that "[appellant] was asked if he had an attorney and he replied that they had appointed him an attorney in Anderson County, and we asked if he wanted his attorney when he talked to us and he stated no." Appellant thereafter gave a statement implicating himself as a participant in the Houston offense. Appellant's confession was admitted into evidence at trial over appellant's objection.

■ In his ground for review, appellant contends "[t]he Court of Appeals incorrectly found no impropriety when police officers, aware that appellant had counsel, initiated a conversation with him two weeks after he had invoked his right to silence." In its findings of fact and conclusions of law on voluntariness of appellant's confession, the trial court found, *inter alia*, that on September 19, 1984, no attorney had been appointed to represent appellant on the charge of capital murder pending in Anderson County, although appellant told the police officers interviewing him that one had been appointed,[1] and that appellant did not at any time request an attorney.[2] Appellant acknowledges in his brief that there was no testimony at the hearing on his motion to suppress or at trial that he specifically invoked his right to counsel, only that he invoked his *Miranda* rights in

general and declined to submit to questioning at the time of his arrest on September 3, 1984. The testimony of the Houston police officers clearly established that appellant did not wish to discuss anything with them at the time of his arrest.

Appellant states in his brief that the issue in this case does not involve the invocation of his Fifth Amendment right to counsel under *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).[3] Nor is the issue in this case whether appellant's Sixth Amendment right to counsel was violated, because at the time of the questioning of appellant by the Houston police officers no judicial proceedings had been initiated against appellant in this cause. See *Wilkerson v. State*, 657 S.W.2d 784, 790 (Tex.Cr.App.1983).

The issue presented to us in this cause is the same as the one confronted by the Supreme Court in *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). In that case, the Supreme Court addressed the circumstances under which the prosecution is prohibited from using a defendant's in-custody statement obtained by police who have renewed interrogation after the defendant has invoked his right to remain silent. The resolution of this issue turned on the Court's interpretation of a single passage in the *Miranda* opinion, which stated:

Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise.

1. The mere mention of the word "lawyer" does not constitute a clear invocation of a defendant's right to counsel. *Russell v. State*, 727 S.W.2d 573 (Tex.Cr.App.1987).

2. Appellant does not challenge the trial court's findings and conclusions, and concedes that there is no testimony that he requested counsel. Since there is a finding that appellant did not request counsel, and the finding is supported by

the record, we do not address the issue raised in *Edwards v. Arizona*, infra, or analyze appellant's contention under the recent Supreme Court case of *Arizona v. Roberson*, ── U.S. ──, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988).

3. We note that an appellant may deliberately waive a ground for review. *Hawkins v. State*, 613 S.W.2d 720, 723 (Tex.Cr.App.1981).

Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. *Miranda*, 384 U.S. at 473–474, 86 S.Ct. at 1627–1628. Although this passage states that "interrogation must cease", the *Miranda* opinion did not indicate under what circumstances, if any, a resumption of questioning is permissible. The Supreme Court in *Michigan v. Mosley*, supra, clearly stated that this *Miranda* passage cannot be read to create a per se proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent. The Supreme Court recognized that the critical safeguard in the passage was a person's "right to cut off questioning" and concluded that the admissibility of in-custody statements taken after a defendant invokes his right to remain silent depends on whether that right was "scrupulously honored". *Michigan v. Mosley*, 423 U.S. at 104, 96 S.Ct. at 326.

■ The threshold issue we must address is whether appellant exercised his right to remain silent at the time of his arrest on the Anderson County warrant in Houston. Foster testified at the suppression hearing that appellant, after being given his *Miranda* warnings, did not wish to discuss anything with him. As stated earlier, appellant told Foster that he had heard of the robbery-murder in Houston but "[appellant] didn't see how he could help himself by talking to [Foster]." Appellant was thereafter released to the Palestine police department. We conclude that appellant's statement to Foster was an invocation of his right to remain silent.

■ Having determined that appellant invoked his right to remain silent, we may now resolve appellant's contention that the Court of Appeals erred in holding that that right was scrupulously honored. The Supreme Court in *Michigan v. Mosley*, supra, did not specify the length of time that police officers must wait before resumption of questioning, and thus a determination of

whether a resumption of questioning is consistent with scrupulous observance of the right to cut off questioning depends upon the circumstances of each case. See *Michigan v. Mosley*, supra, (interrogation immediately ceased, reinitiated on different subject more than two hours later, after warnings were readministered, constitutes scrupulous honoring of right); *United States v. Bosby*, 675 F.2d 1174 (11th Cir. 1982) (interrogation immediately ceased, reinitiated two weeks later, after warnings readministered; scrupulous honoring). Compare *Christopher v. Florida*, 824 F.2d 836 (11th Cir.1987) (interrogation did not cease in spite of defendant's repeated invocation of right to silence; no scrupulous honoring); and *United States v. Hernandez*, 574 F.2d 1362 (5th Cir.1978) (no immediate cessation of questioning but repeated attempts at interrogation; no scrupulous honoring).

In this cause, the Court of Appeals concluded the trial court was justified in finding that the police officers "scrupulously honored" appellant's right to cut off further questioning, citing *Phillips v. State*, 701 S.W.2d 875 (Tex.Cr.App.1985), *cert. denied*, 477 U.S. 909, 106 S.Ct. 3285, 91 L.Ed. 2d 574 (1986). Appellant asserts that *Phillips*, supra, should not adversely affect the outcome of his appeal because it is factually distinguishable from his case. We are not persuaded by this argument. The facts supporting our holding in *Phillips*, supra, that the defendant's right to cut off questioning was scrupulously honored, are summarized in that opinion, where we stated:

> Immediately after appellant indicated that he did not wish to discuss the matter with [the officer], he was taken away from the interrogation room, given lunch, and returned to his cell. Later that afternoon ..., [the officer] took appellant back to the interview room and repeated the *Miranda* warnings. Appellant did not indicate that he did not want to discuss the matter, but rather stated that he wanted guarantees before he would talk. [The officer] stated that he could make no guarantees and repeated the warning that anything appellant may

say could be used against him. Thereafter, appellant gave his confession.

*Phillips,* supra at 891. In *Phillips,* supra, the defendant asked for "a little" time before answering further questions from detectives. Thereupon the questioning ceased and the defendant was given approximately two hours to think about whether he wanted to continue to talk to detectives.

After appellant's arrest in the present cause, he was taken to the Homicide Division where he was administered his rights by Foster, who testified at the suppression hearing that appellant did not give him a statement at that time nor did appellant request an attorney. Appellant was not charged in connection with the offense in Houston, but a "hold" was placed on him for the Palestine police department. After appellant's transfer to Anderson County on September 4, 1984, the Houston police did not talk to him until September 19, 1984, when Cain, Herman, and Patterson went to Palestine to talk to him about the robbery-murder in Houston.

Cain testified that he initiated the interview with appellant at the jail and gave appellant his *Miranda* warnings prior to speaking with him. As noted earlier, appellant told Cain "I know my rights," and indicated to Cain that he understood his rights. Cain stated at the suppression hearing that appellant did not request an attorney, and decided to "give up those rights." Cain then interviewed appellant as to the facts of the Houston offense only, secured appellant's statement, and Patter-

son fingerprinted appellant. As previously stated, during his interview with appellant, Cain asked him if he had requested an attorney. Appellant told Cain that he had been appointed an attorney in Anderson County but that he did not want his attorney while talking to him.

We hold that on the facts of this case appellant's right to remain silent and cut off questioning was scrupulously honored. Questioning of appellant ceased immediately upon his invocation of his right to remain silent. Appellant was then transferred to Anderson County, and Houston police made no attempt to reinterrogate appellant until 15 days later. Appellant was warned of his rights prior to any questioning. We find no impropriety on the part of the Houston police in resuming questioning of appellant after the passage of such a significant period of time [4], and hold that appellant's statement was admissible in evidence at trial.

Accordingly, the judgment of the Court of Appeals is affirmed.

CLINTON, Judge, dissenting.

The State argues in its brief that the Court of Appeals "correctly analyzed the issue actually presented, i.e. the State's proof of a valid waiver following the appellant's invocation of a right to silence," State's Brief at 4, and suggests that although "the Court of Appeals did not decide the issue on the basis of waiver ..., waiver would be an appropriate basis for dismissing the petition as improvidently granted," *id.,* at 6.[1] This Court does not

---

4. Judge Clinton's dissent chides us for singling out this factor. We consider all of the facts in determining whether the "scrupulously honored" test is met, including the fact that newly discovered evidence in the form of a co-defendant's confession implicating defendant had come into the hands of the police, and the fact that defendant had been appointed an attorney for the Palestine case and was asked by the police if he wanted to first talk to him (as opposed to talking to some as yet unknown and unappointed attorney). Each case must be judged on the totality of its own facts.

1. Analyzing the "interview" conducted by Sgt. S.A. Cain, *et al* in the Anderson County jail, and calling it is a "resumption" of the one terminat-

ed by Sgt. Brian Foster two weeks before in Houston, the Houston (1st) Court of Appeals pointed out and concluded:

"Here, the Houston police officers resumed the interview with appellant more than two weeks after he exercised his right to silence. Prior to the resumption of that interview, appellant was again given the *Miranda* warnings. He did not ask for an attorney to be present during the interview, nor did he ask that the interview be delayed so that an attorney could be present. Under the circumstances presented, the trial court was justified in finding that the police officers 'scrupulously honored' the appellant's right to cut off further questioning. [citations to Texas cases omitted]."

address that notion; however, in focusing on invocation of and honoring the right to remain silent, implicity it correctly finds that "waiver" is not a pivotal question in this case.

On the matter of custodial interrogation, in *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the Supreme Court understood when "interrogation must *cease*," but was troubled that other parts of a passage in its earlier opinion in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), did not state *"under what circumstances,* if any, a resumption of questioning is permissible," and could be read to reach various interpretations leading to "absurd and unintended results." 423 U.S., at 101–102, 96 S.Ct., at 325–326.[2]  Accordingly, making what it characterized as a "reasonable and faithful interpretation of the *Miranda* opinion," the Supreme Court proceeded to reform *Miranda,* viz:

> "... We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether 'his right to cut off questioning' was 'scrupulously honored.' "

*Id.,* at 104, 96 S.Ct., at 326. The Supreme Court then reviewed salient facts and circumstances of two *separate* interrogational sessions by *different* officers about *unrelated* crimes, finding that Mosley's " 'right to cut off questioning' was fully respected in this case." *Id.,* at 104, 96 S.Ct., at 326–327. And for reasons given, it concluded that "admission in evidence of [his] incriminating statement [made in the second session] did not violate the principles of *Miranda v. Arizona.*" *Id.,* at 107, 96 S.Ct. at 328. It said nothing about waiver of *Miranda* rights.

In his concurring opinion Justice White is highly critical of the majority opinion for its implication that "some custodial confessions will be suppressed even though they follow an informed and voluntary waiver of the defendant's rights." *Id.,* at 107, 96 S.Ct., at 328. He doubts the conclusion is compelled by *Miranda,* and in any event insofar as it might be read "to reject voluntariness as the standard by which to judge informed waivers of that right [to silence]," it *should be disapproved. Id.,* at 108–110, 96 S.Ct., at 328–329. His parting thrust is to want of any reason "to rob the accused of the choice to answer questions voluntarily for some unspecified period of time following his own previous contrary decision." *Id.,* at 111, 96 S.Ct., at 330.[3]

But, as Justice Brennan confirms in his dissent, the Court continues to recognize that under *Miranda,* "the cost of assuring voluntariness by procedural tests, independent of any actual inquiry into voluntariness, is that some voluntary statements will be excluded." *Ante,* at [100, 96 S.Ct.,] at 324." *Id.,* at 113, 96 S.Ct., at 331. See also Stone, *The Miranda Doctrine in the Burger Court,* 1977 Supreme Court Review 99, at 133: "[T]he Court made clear that the requirement that the police 'scrupulously honor' the suspect's assertion of his right to remain silent is independent of the requirement that any waiver be knowing, intelligent, and voluntary."

With those observations I agree that the suggestion by the State is properly, albeit implicitly, rejected in the opinion of the Court. However, on the merits, there are some problems.

In the first place, the analysis made by Judge Miller for the Court concentrates

---

2. Although the *Miranda* Court clearly stated that in the context of an interrogation about one or more crimes *"any statement* taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise," the *Mosley* Court worried that could be read to mean that such a person "can *never again* be subjected to custodial interrogation "by *any* police officer, at *any* time or place on *any* subject." (All emphasis is mine throughout unless otherwise noted.)

3. If the opinion he recently wrote for the Supreme Court in *Patterson v. Illinois,* —— U.S. ——, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988), is a harbinger, his view will surely ultimately prevail: "So long as the accused is made aware of the 'dangers and disadvantages of self-representation' during postindictment questioning, by use of the *Miranda* warnings, his waiver of his Sixth Amendment right to counsel at such questioning is 'knowing and intelligent.' " *Id.,* at ——, 108 S.Ct. at 2399.

narrowly on the factor of lapsed time from one session to another, at 250, when during all that time appellant was confined in jail, already subjected to inordinate pressures, working to undermine his will.

More importantly, the negative finding that follows is made solely on that basis, *viz:*

"... We find no impropriety on the part of the Houston police in resuming questioning of appellant after the passage of such a significant period of time, and hold that appellant's statement was admissible in evidence at trial."

*Id.,* at 250. Let us put aside for a moment that the finding fails to take into consideration other features persuading the Supreme Court that officers had "fully respected" rights of an arrestee. *Mosley,* 423 U.S., at 104–106, 96 S.Ct., at 327.

That finding seems to assume, despite the fact a suspect has once invoked his right to silence and thereby "cut off questioning," when "a significant time" has passed, *Miranda,* as refined by *Mosley,* provides that a peace officer in the same police department is nonetheless free to "resume" questioning of the suspect. *Miranda* certainly was read otherwise, and *Mosley* does not authorize resumption of custodial interrogation with impunity.

In determining when "a resumption of questioning is *permissible,*" *Mosley* first concludes that *Miranda* did not create "a *pro se* proscription of indefinite duration upon any further questioning by *any* police officer on *any* subject, once the person in custody has indicated a desire to remain silent." *Id.,* at 102–103, 96 S.Ct., at 326.[4]

The opinion then turns to make an interpretation of *Miranda* which would serve to safeguard its perceived "intention" to assure protection of the right to remain silent, and with that the Supreme Court concluded: whether a statement obtained *"after the person in custody has decided to remain silent"* is admissible against him "depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupu-

lously honored.'" *Id.,* at 104, 96 S.Ct., at 326.

Thus while a peace officer may later approach a suspect who earlier decided to remain silent and exercised his right to cut off questioning on the subject of a particular crime, as appellant did when first interrogated by Foster in Houston, the officer must take care that the earlier initial exercise of that right is "scrupulously honored," else any resulting statement taken thereafter will not be admissible in evidence.

In determining whether an officer later undertaking further questioning scrupulously honored initial exercise of that right, a court must examine all relevant facts and circumstances. In this cause, for example, having once cut off questioning about the robbery/murder in Houston, that appellant did not request an attorney two weeks thereafter in Palestine would not bear on whether his continuing right to remain silent was fully respected by Sgt. Cain, et al. *Mosley,* n. 10, at 104, 96 S.Ct., at 326. Instead, relevant considerations are such as reviewed by the Supreme Court in *Mosley, viz:*

"... After an interval of more than two hours [following exercise of his right to cut off questioning by Detective Cowie], Mosely was questioned by another police officer at another location about *an unrelated holdup murder.* [Upon again carefully warning him], subsequent questioning *DID NOT undercut Mosley's previous decision not to answer Detective Cowie's questions.* Detective Hill *DID NOT resume the interrogation about [the unrelated robberies],* but INSTEAD *focused exclusively on the [holdup murder],* a crime *different in nature and in time and place of occurrence* from the robberies for which Mosely had been arrested and interrogated by Detective Cowie. [Hill's] questioning of Mosley about an unrelated homicide was *quite consistent with....*

---

**4.** Such a conclusion would provide a basis for a rationale to permit resumption of questioning by a *different* officer at *another* time and place

on a *different* subject, thus fitting the facts of *Mosley.*

*Mosley's earlier refusal to answer any questions about the robberies.*

This is not a case, therefore, where the police failed to honor a decision of a person in custody to cut off questioning [either by continuing interrogation or by persisting in repeated efforts to make him change his mind]. In contrast to such practices, the police here immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation *to a crime that had not been a subject of the earlier interrogation.*

*Id.,* at 104–106, 96 S.Ct., at 326–327.

Quite obviously, then, there are more factors than mere passage of time between an initial barren interrogation and a later productive one to be considered in determining whether the subsequent interrogator "scrupulously honored" the earlier decision to cut off questioning about the same crime. Yet, neither this Court nor the Houston courts seem to give the complete *Mosley* analysis careful consideration. Thus even a "fresh set" of *Miranda* warn-

ings was not enough in *Mosley.*[5] Most emphasized by iteration was that the second round of interrogation was limited to an unrelated holdup murder and, therefore, did not "undercut" Mosley's previous decision not to answer questions about robberies. Some courts has since found that to be a determinative ingredient. *Stone,* supra, at 135, n. 192, and accompanying text. But, of course, because here the subject of both sessions is the same crime, that saving feature is not in this cause.[6] See *Watson v. State,* 762 S.W.2d 591 (Tex.Cr.App. 1988).

While its standard is "devoid of any clear substantive content," *Stone,* supra, at 134–135, that the *Mosley* Court intended its review of such factors as were revealed in its record there to be inclusive is most unlikely. Certainly in other cases facts and circumstances surrounding successive interrogational sessions may present a variety of different factors that are also just as relevant to a determination. *Ibid.* In the instant cause, however, the respective opinions of this Court and of the Houston (1st) Court of Appeals and the brief for the

---

**5.** In some quarters, efficacy of subsequent warnings in the face of an earlier exercise of the right to remain silent is seriously questioned. Mere repetition of warnings is thought to trivialize their sanctity, conveying to an accused the idea that former exercise of rights has lost its force and effect, so that a failure again to claim those rights is the consequence of overbearing in continued detention and further questioning. See, e.g., Brennan, J., dissenting in *Mosley,* at 115, 96 S.Ct. at 332. That subsequent interrogation is about a different crime is "an important consideration," for it does not indicate "a lack of respect for the prior assertion of silence," *Stone, op cit.,* supra, at 136.

**6.** In *Phillips v. State,* 701 S.W.2d 875 (Tex.Cr. App.1985), discussed in the majority opinion at pages 249–250, after Phillips was arrested in Los Angeles, he was immediately warned, taken to the police department where Detective Garza told him he was under arrest for arson, and proceeded to question him for some hour and a half that day and several hours the next morning, but the opinion does not reveal the subject and content except to allude a wide ranging discussion about his "life in New York, Houston and Los Angeles." *Id.,* at 890. There is no suggestion at all that during any of those sessions Phillips ever claimed or exercised his right to silence.

Shortly before noon, a Los Angeles officer interrupted and announced that Phillips had to leave then for lunch. According to the opinion the Detective Garza asked Phillips "whether he wanted to discuss his activities in Houston," and Philips replied that "he 'wanted a little time' to think about it." He was taken to lunch and returned to his cell. Questioning resumed at about 2:00 p.m., and ultimately Phillip confessed to a capital murder in Houston. *Ibid.*

The Court interpreted his response to be a "request," and found the "request" was "an invocation of [his] right to remain silent at that time." *Id.,* at 891. Now, the majority says "the questioning ceased and [Phillips] was given approximately two hours to think about whether he wanted to talk to the detectives." At 250. (Another interpretation—more consistent with the finding made by the trial court that Phillips never told Detective Garza that "he wanted to remain silent" or "he wanted to terminate the interview," *id.,* at 890—is that Phillips did not seek to "cut off questioning," but rather was taking advantage of a break for lunch to consider his alternatives when interrogation would surely resume after lunch.) In the event, for reasons discussed *ante Phillips* is far away from controlling decision in this cause.

State fail to make any record reference to evidence of any other factors deemed relevant to our determination.

For all those reasons I believe the issue is being wrongly decided and, therefore, must dissent.

TEAGUE, J., joins this opinion.