David CAMERON, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–94–00203–CR.

Court of Appeals of Texas,
El Paso.

Nov. 16, 1995.

Joe A. Spencer, Jr., El Paso, for Appellant.

Jaime E. Esparza, District Attorney, El Paso, for State.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

## OPINION

LARSEN, Justice.

This is an appeal from a conviction for the offense of capital murder. The jury found appellant, David Cameron, guilty of two counts of capital murder. The first count was for the murder of Carmen Sustaita committed during the course of a robbery and the second was for the contemporaneous murder of Carmen Sustaita's son, Manny Sustaita, during the course of the same robbery. The state elected not to seek the death penalty, so the trial court imposed a sentence of life imprisonment. We affirm.

## FACTS

On September 22, 1991, Agustin Avila, Steve Alvarado, and Cameron were "kicking back and smoking some dope" at Cameron's house. Avila testified at trial. According to Avila, Alvarado suggested that the trio steal some more dope from the victim, Manny Sustaita, and, if necessary, kill Manny Sustaita to get it. Avila thought at first that Alvarado was "just trying to freak us out or something." Alvarado also suggested that Avila and Cameron get knives from the kitchen. Avila and Cameron complied, and they also got two red duffle bags Avila had brought to Cameron's house earlier. When the three arrived at Manny Sustaita's house, Manny Sustaita opened the door. According to Cameron's trial testimony, Manny Sustaita and Alvarado began talking and got into a fight. Cameron saw Alvarado making stab-

bing motions at Manny Sustaita. Carmen Sustaita, Manny Sustaita's mother, came out of her bedroom and Avila began to stab her, pushing her back into the bedroom. Cameron testified that he grabbed Carmen Sustaita in an attempt to help her, but when Avila left the room, Cameron began to attempt to stab her. Alvarado came into the bedroom and killed Carmen Sustaita with his knife. Cameron also admitted that, at some point, he had "wrestled" with Manny Sustaita, but he denied attempting to stab Manny Sustaita.

Avila testified, however, that Cameron, not Avila, first attacked Carmen Sustaita when she came out of the bedroom. Avila claimed that he stayed in the room with Alvarado during the attack on Manny Sustaita and he did not see Carmen Sustaita or Cameron again until he went into the bedroom after Manny Sustaita had been killed. According to Avila, Cameron asked Avila to "finish her [Carmen Sustaita] off" because she was still alive. Avila testified that he could not kill Carmen Sustaita, but Alvarado came in and stabbed Carmen Sustaita to death.

After Carmen Sustaita and Manny Sustaita were dead, Alvarado said that the three should "get the stuff we came for." Alvarado took money from Carmen Sustaita's purse. Cameron took some cocaine he found in the house and put it in his pocket. Cameron claimed that he stole from the Sustaita home because he was afraid of Avila and Alvarado. Both Cameron and Avila testified at trial that they thought they were going to the Sustaita home to rob and scare the Sustaitas, but, despite Alvarado's statements, they did not think that they would actually kill them.

The state offered Cameron's statement into evidence and the trial court admitted it. In his statement, Cameron said:

Agustin, whom I call Augie [Avila], Steve, whom I call Psycho [Alvarado], and I were at my house. We were talking about how Manny rips the guys off, during the sale of his drugs. We were also bullshitting about getting some money, and the idea was kicked around that we should rob Manny.

We all kicked the idea around and it was not just one person but all of us. We all threw around ideas of how to hit Manny and his mother. . . .

We all agreed that we would just go up to the door and hit Manny and his mother if she became a problem. By hitting Manny and his mother, we meant that if need be, we would have to kill them.

Cameron also admitted in his statement that he attempted to cut Carmen Sustaita's throat, and that he took cocaine from a dresser in Carmen Sustaita's bedroom after she was dead.

### Sufficiency of the Evidence

In his first point of error, Cameron alleges that the trial court erred in failing to grant his motion for directed verdict on the capital murder of Manny Sustaita. Cameron asserts that the evidence shows only that he intended to cause serious bodily injury or death to Carmen Sustaita, but not to Manny Sustaita. When an appellant in a criminal case asserts error in the trial court's failure to grant a directed verdict, the appellate court should address the point as a challenge to the sufficiency of the evidence to support the conviction. *See Cook v. State*, 858 S.W.2d 467, 469–70 (Tex.Crim.App.1993). In passing on sufficiency of the evidence, we determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318, 319, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560, 573 (1979); *Geesa v. State*, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991). We do not resolve conflicts of fact or assign credibility to witnesses, as it was the function of the trier of fact to accept or reject any, part, or all of any witness's testimony. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991). Our duty rather, is to determine only if the explicit and implicit findings of the trier of fact are rational by viewing all the evidence in a light most favorable to the verdict. *Adelman*, 828 S.W.2d at 421–22. In so doing, we resolve any inconsistencies in the evidence in favor of the verdict. *Matson*, 819 S.W.2d at 843, *quoting Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

The state alleged Cameron committed the capital murder of Manny Sustaita both as a principal and as a party. The evidence at trial was sufficient to support Cameron's conviction as a party to the capital murder of Manny Sustaita. The law of parties is applicable to capital murder cases. *Johnson v. State,* 853 S.W.2d 527, 534 (Tex. Crim.App.1992). While the presence of an accused at the scene of an offense is not alone sufficient to support a conviction, it is a circumstance tending to prove guilt, which, combined with other facts may suffice to show that the accused was a participant. *Beardsley v. State,* 738 S.W.2d 681, 685 (Tex. Crim.App.1987). In order to impose culpability as a party to the offense of capital murder, the state must prove that one party committed a capital murder, and that Cameron, with intent to promote or assist the capital murder, aided, encouraged or solicited the other party to commit the capital murder. *See e.g., Chatman v. State,* 846 S.W.2d 329, 330 (Tex.Crim.App.1993). The evidence must show that at the time of the offense, the parties were acting together, each doing some part of the execution of the common purpose. *Cordova v. State,* 698 S.W.2d 107, 111 (Tex.Crim.App.1985).

In this case, the offense charged is murder committed in the course of a robbery, a capital offense. Proof of a robbery committed as an afterthought and unrelated to a murder will not support a capital murder conviction. *Moody v. State,* 827 S.W.2d 875, 892 (Tex.Crim.App.1992). The state must prove a nexus between the murder and the theft. That is, that the defendant committed the murder in order to facilitate the taking of property. *Id.* The ultimate question is whether any rational trier of fact would be justified in finding, from the evidence as a whole, that the defendant intended to take his victim's property before, or as the murder occurred. *Nelson v. State,* 848 S.W.2d 126, 131–32 (Tex.Crim.App.1992).

Cameron's written statement shows that he agreed with Avila and Alvarado to go to the Sustaita home and to rob the Sustaitas. Further, the statement indicates that Cameron agreed with Avila and Alvarado to kill Manny Sustaita and his mother, Carmen Sustaita, "if she became a problem," in order to complete the robbery. Although in his trial testimony, Cameron denied a prior agreement to rob and kill the Sustaitas, he admitted that he and Avila got kitchen knives from his kitchen before they went to the Sustaita home. In his testimony at trial, Avila admitted a prior agreement to rob the Sustaitas which included Cameron. Cameron admitted that once the three got to the Sustaita home, he "wrestled" with Manny Sustaita. Further, Cameron admitted that he attempted to stab Carmen Sustaita. After Carmen Sustaita and Manny Sustaita were dead, Cameron looked for, found, and took cocaine. Alvarado took money from Carmen Sustaita's purse. Thus, the evidence is sufficient to show that Cameron acted in agreement with Avila and Alvarado to rob the Sustaitas and that Cameron committed acts during the commission of the robbery that, at the very least, were intended to facilitate the murders of both Carmen and Manny Sustaita so that the three could complete the robbery.

Accordingly, we overrule Cameron's first point of error.

### Failure to Include Duress Instruction in Charge

In his second point of error, Cameron alleges that the trial court erred in failing to submit a definition of duress to the jury. Cameron requested the instruction, and objected to the trial court's failure to include it. Duress is an affirmative defense. *Alford v. State,* 806 S.W.2d 581, 584 (Tex. App.—Dallas 1991), *aff'd,* 866 S.W.2d 619 (Tex.Crim.App.1993). TEX.PENAL CODE ANN § 8.05 (Vernon 1994) defines duress as follows:

(a) It is an affirmative defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another.

. . . . .

(c) Compulsion within the meaning of this section exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting

the pressure. Tex.Penal Code Ann § 8.05 (Vernon 1994).

If a defensive issue is raised by the evidence, the trial court should submit it to the jury. As a general rule, an accused is entitled to an affirmative defensive instruction on every issue raised by the evidence, regardless of whether such evidence is strong, feeble, unimpeached or contradicted, and even if the trial court has the belief that the testimony is not entitled to belief. *Sanders v. State*, 707 S.W.2d 78, 80 (Tex.Crim.App.1986). In this case, however, the evidence does not raise duress. The claim of duress must have an objective, reasonable basis. *See Bernal v. State*, 647 S.W.2d 699, 706 (Tex.App.—San Antonio 1982, no pet.) (defendant's fear that co-defendant might get violent if defendant did not "take his turn" in rape held not sufficient to raise defense of duress). In this case, there is no evidence to support an objective basis for Cameron's claim of compulsion. While Cameron testified that he was generally afraid of Alvarado's temper, there is no evidence of any specific, objective threat to Cameron of death or serious bodily harm. Further, Cameron testified that Alvarado and Avila were not forcing him to do anything the night of the murders. He claimed that Alvarado and Avila were telling him what to do and he was doing it. The fact that a defendant is taking orders from another, however, is not sufficient to raise the defense of duress. *See Leviness v. State*, 247 S.W.2d 115, 118, 157 Tex.Crim. 160 (1952). We find that the evidence did not raise the defense of duress. Thus, it was not error for the trial court to refuse to submit it. Accordingly, we overrule Point of Error Two.

### *Instruction on Effect of Guilty Finding in Capital Case*

■ In his final point of error, Cameron alleges that the trial court erred in failing to instruct the jury on the effect of a guilty finding in a capital murder case. Cameron argues that Tex.Code Crim.Proc.Ann. art. 37.071 deprives a defendant of his constitutional right to a trial by jury. Article 37.071 provides, in pertinent part, that if the jury finds the defendant guilty of a capital felony in which the state does not seek the death penalty, the judge shall sentence the defendant to life imprisonment. Tex.Code Crim. Proc.Ann. art. 37.071 (Vernon Supp.1995). Cameron asserts that because he timely requested a trial by jury, the jury should have assessed his punishment. He argues that article 37.071 therefore is unconstitutional because it prevents the jury from assessing punishment in capital cases where the state does not seek the death penalty.

■ The state and federal constitutional right to a trial by jury does not extend to the right to have a jury assess punishment. *Tinney v. State*, 578 S.W.2d 137, 138 (Tex.Crim.App.1979); *Bullard v. State*, 548 S.W.2d 13, 19 (Tex.Crim.App.1977). The Legislature is vested with the power to define crimes and prescribe penalties. *State ex. rel. Smith v. Blackwell*, 500 S.W.2d 97, 104 (Tex.Crim.App.1973). It is within the constitutional power vested in the Legislature to determine that the penalty for capital murder should be death or life imprisonment. *See Ex parte Granviel*, 561 S.W.2d 503, 515 (Tex.Crim.App.1978); *Allen v. State*, 552 S.W.2d 843, 846–47 (Tex.Crim.App.1977). Accordingly, we overrule Point of Error Three.

### *CONCLUSION*

Having considered and overruled each of Cameron's points of error, we affirm the judgment of the trial court.