TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00213-CR







Robert Watt, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0955583, HONORABLE JON N. WISSER, JUDGE PRESIDING







A jury found appellant Robert Watt guilty of capital murder. Tex. Penal Code Ann.
§ 19.03(a)(2) (West 1994). The State did not seek the death penalty, and the district court
assessed punishment at imprisonment for life. Tex. Penal Code Ann. § 12.31(a) (West 1994);
Tex. Code Crim. Proc. Ann. art. 37.071, § 1 (West Supp. 1998). We will affirm.

David Reynolds, Jason Ishee, and Watt, each of whom was eighteen or nineteen
years old, spent the late afternoon of October 31, 1995, loitering outside an Austin shopping mall. 
As night fell, Watt and Ishee agreed on a scheme to steal Reynolds's ten-year-old car. They asked
Reynolds to drive them to an apartment complex, ostensibly to purchase marihuana. At the
complex, they lured Reynolds to the rear of the building where they beat him to death with their
fists and feet, and with a large rock. Watt and Ishee took Reynolds's car and five dollars they
found in his pocket, then drove to Ishee's girlfriend's house. Ishee showed the girl the blood on
his hands and bragged that he had killed someone. Watt and Ishee spent the rest of that night and
the following day driving around Austin in Reynolds's car, then left town. They were arrested
on November 3 in Wharton, still driving the stolen vehicle. Each man gave a written statement
to the police admitting the robbery-murder, blaming the other as the chief actor, and denying an
intent to kill Reynolds. (1)

In his first point of error, Watt contends the district court erred by "failing to grant
a mistrial in order to sever appellant's cause." Prior to trial, Watt moved to sever his prosecution
from that of his codefendant Ishee. The motion was premised on the assumption that the statement
he gave to the police would be edited to remove references to Ishee before being admitted in
evidence, thus avoiding Bruton error. See Bruton v. United States, 391 U.S. 123, 135-36 (1968)
(defendant's confrontation right violated by admission at joint trial of nontestifying codefendant's
confession that incriminates both defendants); Richardson v. Marsh, 481 U.S. 200, 211 (1987)
(Bruton error avoided by redacting codefendant's confession to remove references to defendant). 
It was Watt's contention that he would be unable to offer the redacted portions of his statement
asserting Ishee's greater culpability, and thus would be denied the opportunity to assert his
allegedly lesser culpability. See Finley v. State, 917 S.W.2d 122, 125-26 (Tex. App.--Austin
1996, pet. ref'd) (if rule of optional completeness conflicts with codefendant's confrontation right,
constitutional right must prevail over evidentiary rule). The severance motion was withdrawn at
a pretrial hearing after the prosecutor stated, "We're not planning to redact any portion of
anyone's statement; not a sentence, not a period, either one of their statements."

During trial, the State offered in evidence each defendant's complete, unedited
written statement to the police. Watt objected to the admission of Ishee's statement on Bruton
grounds; Ishee objected to Watt's statement on the same grounds. The court responded by
ordering both statements edited to remove references to the codefendant. Watt then renewed his
motion to sever and requested a mistrial as to himself, so that he might be tried separately. The
motions were overruled. Watt contends the court's rulings denied him due process by preventing
him from offering mitigating and exculpatory evidence to the jury, by which we assume he means
those redacted portions of his written statement in which he described Ishee's role in the murder.

Watt's brief on appeal contains no argument or citation to authority in support of
his assertion that his due process rights were violated. The attempt to renew the motion to sever
in the middle of trial was untimely. See Foster v. State, 652 S.W.2d 474, 477 (Tex.
App.--Houston [1st Dist.] 1983), aff'd, 693 S.W.2d 412 (Tex. Crim. App. 1985). And rather
than denying the defendants due process, the redaction of the statements was necessary to insure
their due process rights. See Pointer v. Texas, 380 U.S. 400, 403 (1965) (Fourteenth Amendment
incorporates confrontation right). The district court was required to redact all references to Watt
from Ishee's statement after Watt asserted his constitutional confrontation right. Similarly, the
court was required to redact all references to Ishee from Watt's statement after Ishee asserted his
confrontation right. No error is presented. Point of error one is overruled.

Watt next asserts that his trial counsel's handling of the severance issue denied him
effective assistance. To prevail on a claim of ineffective assistance of counsel at the guilt stage,
an appellant must show that counsel made such serious errors that he was not functioning
effectively as counsel and that these errors prejudiced the appellant's defense to such a degree that
he was deprived of a fair trial. Strickland v. Washington, 466 U.S. 668 (1984); Hernandez v.
State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986); and see Moore v. State, 694 S.W.2d 528, 531
(Tex. Crim. App. 1985); O'Hara v. State, 837 S.W.2d 139, 143 (Tex. App.--Austin 1992, pet.
ref'd). Counsel's performance must be judged in its totality, rather than by isolating individual
errors or omissions. Oestrick v. State, 939 S.W.2d 232, 237 (Tex. App.--Austin 1997, pet.
ref'd). We must avoid the distortions of hindsight, and evaluate counsel's conduct from his
perspective at the time of trial. Ex parte Kunkle, 852 S.W.2d 499, 505 (Tex. Crim. App. 1993). 
A defendant asserting an ineffective assistance claim must overcome a strong presumption that
counsel's conduct fell within the wide range of reasonable professional assistance. Jackson v.
State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). This burden is made more difficult when,
as in this cause, the effectiveness issue was not raised in a motion for new trial and there is no
record focused on the conduct of counsel. See id. at 772 (Baird, J., concurring).

Watt urges that counsel should not have withdrawn the motion to sever prior to
trial, asserting that he was "entitled to a separate trial" and that "the trial court probably would
have granted" the motion had it not been withdrawn. Alternatively, Watt argues that his attorney
should not have withdrawn the motion without first obtaining a written stipulation, presumably
from Ishee's attorney, that Watt's complete, unedited statement would be admitted in evidence. 

We are not persuaded that the course of trial would have been different if Watt's
attorney had pursued the severance issue in the manner Watt now suggests. Watt's assertion that
he was "entitled" to a severance, and that the district court would have granted the motion to sever
had it not been withdrawn, is not supported by the record. While a joint trial presented potential
Bruton error, this could be and was avoided by redacting the confessions. Ishee's attorney refused
to waive his client's confrontation right during trial, and we have no reason to believe he would
have been willing to do so in advance of trial. Watt has not carried his burden of demonstrating
ineffectiveness of counsel. Points of error two and three are overruled.

By three points of error, Watt contends his written statement should have been
suppressed because it was obtained in violation of his rights under the constitutions and laws of
the United States and Texas. See U.S. Const. Amends. V, XIV; Tex. Const. art. I, §§ 10, 19;
Tex. Code Crim. Proc. Ann. art. 38.22 (West 1979 & Supp. 1999). We quote Watt's argument
in support of these contentions in full:


The record shows that Appellant never affirmatively waived his rights and
never voluntarily made a statement. Appellant merely acquiesced in the requests
of the police that he help himself out by making a statement. Because of the young
age and circumstances of Appellant, he was especially susceptible to subtle trickery
employed by the police. The findings of fact made by the trial court should not be
given any weight because they are conclusory and insufficient.



The factual statements in Watt's argument are either unsupported or contradicted
by the record. Watt did not testify in support of his motion to suppress. The State's witnesses
testified that Watt was fully advised of his rights and voluntarily confessed. No error is shown. 
Points of error nine, ten, and eleven are overruled.

Finally, Watt contends the Texas capital murder scheme is unconstitutional insofar
as it results in an automatic life sentence upon conviction if the State does not seek the death
penalty. See Penal Code § 12.31(a); Code Crim. Proc. art. 37.071, § 1. Specifically, Watt
asserts that capital murder defendants in such cases are denied "the right to present evidence on
and have the jury consider the lesser included offense of voluntary manslaughter," that the law
grants prosecutors "unbridled and arbitrary discretion to deny a defendant the right to present
evidence on and have the jury consider the lesser included offense of voluntary manslaughter,"
and that the mandatory life sentence is cruel and unusual punishment. See U.S. Const. amends.
VIII, XIV; Tex. Const. art. I, §§ 10, 15, 19. The offense of voluntary manslaughter was
abolished over one year before the homicide giving rise to this cause was committed. We assume
that Watt's reference to voluntary manslaughter is a reference to the "sudden passion" defense that
may be raised at the punishment stage of a murder trial and that, if proved, reduces the offense
to a second-degree felony. See Tex. Penal Code Ann. § 19.02(d) (West 1994).

The authority to define crimes and prescribe their punishments is vested in the
legislature. Ex parte Granviel, 561 S.W.2d 503, 515 (Tex. Crim. App. 1978). In the exercise
of this authority, the legislature may determine that the penalty for capital murder is either death
or life imprisonment. Cameron v. State, 925 S.W.2d 246, 250 (Tex. App.--El Paso 1995, no
pet.); see Allen v. State, 552 S.W.2d 843, 847 (Tex. Crim. App. 1977) (State may prosecute
minor for capital murder even though only possible punishment is life imprisonment). A
sentencing scheme that calls for an automatic sentence of life imprisonment, rather than an
individualized punishment determination, does not violate the Eighth Amendment guarantee
against cruel and unusual punishments. Harmelin v. Michigan, 501 U.S. 957, 995 (1991). (2) There
is no significant difference between the Eighth Amendment prohibition against cruel and unusual
punishments and the Texas Constitution's prohibition against cruel or unusual punishments. Cantu
v. State, 939 S.W.2d 627, 645 (Tex. Crim. App. 1997). 

Watt argues that a defendant convicted of capital murder in a prosecution in which
the State seeks the death penalty is treated more favorably than a defendant convicted of capital
murder after the State has waived the death penalty. This is true, he argues, because in the former
situation "the jury may favorably determine the voluntary manslaughter issue during the
punishment stage." Watt does not cite authority for this argument, and we can find none. At the
punishment stage of a capital murder prosecution in which the State seeks the death penalty, the
jury is asked certain punishment questions, the answers to which determine whether the defendant
receives the death penalty or life imprisonment. Article 37.071, § 2. The statute does not
authorize the jury to assess a term of imprisonment less than life. (3) Section 12.31(a) and article
37.071, section 1, by predetermining the punishment for capital murder when the death penalty
is waived, provide the maximum benefit that a defendant convicted of capital murder could receive
in a contested punishment hearing before a jury. Prater v. State, 903 S.W.2d 57, 60 (Tex.
App.--Fort Worth 1995, no pet.). These statutes do not violate the constitutional right to trial by
jury because that right does not extend to the assessment of punishment. Allen, 552 S.W.2d at
847; Bullard v. State, 548 S.W.2d 13, 17-20 (Tex. Crim. App. 1977). Points of error four
through eight are overruled.

The judgment of conviction is affirmed.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Jones and Yeakel

Affirmed

Filed: February 11, 1999

Do Not Publish
1. Watt and Ishee were tried jointly. This Court affirmed Ishee's conviction in Ishee v. State,
No. 03-97-00212-CR (Tex. App.--Austin May 14, 1998, no pet.) (not designated for publication).
2. Although Harmelin produced several opinions, five justices joined this holding.
3. If the issue is raised by the evidence, a capital murder defendant may be convicted of the
lesser included offense of murder. Penal Code § 19.03(c). If the defendant is convicted of the
lesser offense, article 37.071 does not apply and the defendant may assert sudden passion in
mitigation of punishment pursuant to section 19.02(d). This is true whether or not the State
waived the death penalty prior to trial.



tence is cruel and unusual punishment. See U.S. Const. amends.
VIII, XIV; Tex. Const. art. I, §§ 10, 15, 19. The offense of voluntary manslaughter was
abolished over one year before the homicide giving rise to this cause was committed. We assume
that Watt's reference to voluntary manslaughter is a reference to the "sudden passion" defense that
may be raised at the punishment stage of a murder trial and that, if proved, reduces the offense
to a second-degree felony. See Tex. Penal Code Ann. § 19.02(d) (West 1994).

The authority to define crimes and prescribe their punishments is vested in the
legislature. Ex parte Granviel, 561 S.W.2d 503, 515 (Tex. Crim. App. 1978). In the exercise
of this authority, the legislature may determine that the penalty for capital murder is either death
or life imprisonment. Cameron v. State, 925 S.W.2d 246, 250 (Tex. App.--El Paso 1995, no
pet.); see Allen v. State, 552 S.W.2d 843, 847 (Tex. Crim. App. 1977) (State may prosecute
minor for capital murder even though only possible punishment is life imprisonment). A
sentencing scheme that calls for an automatic sentence of life imprisonment, rather than an
individualized punishment determination, does not violate the Eighth Amendment guarantee
against cruel and unusual punishments. Harmelin v. Michigan, 501 U.S. 957, 995 (1991). (2) There
is no significant difference between the Eighth Amendment prohibition against cruel and unusual
punishments and the Texas Constitution's prohibition against cruel or unusual punishments. Cantu
v. State, 939 S.W.2d 627, 645 (Tex. Crim. App. 1997). 

Watt argues that a defendant convicted of capital murder in a prosecution in which
the State seeks the death penalty is treated more favorably than a defendant convicted of capital
murder after the State has waived the death penalty. This is true, he argues, because in the former
situation "the jury may favorably determine the voluntary manslaughter issue during the
punishment stage." Watt does not cite authority for this argument, and we can find none. At the
punishment stage of a capital murder prosecution in which the State seeks the death penalty, the
jury is asked certain punishment questions, the answers to which determine whether the defendant
receives the death penalty or life imprisonment. Article 37.071, § 2. The statute does not
authorize the jury to assess a term of imprisonment less than life. (3) Section 12.31(a) and article
37.071, section 1, by predetermining the punishment for capital murder when the death penalty
is waived, provide the maximum benefit that a defendant convicted of capital murder could receive
in a contested punishment hearing before a jury. Prater v. State, 903 S.W.2d 57, 60 (Tex.
App.--Fort Worth 1995, no pet.). These statutes do not violate the constitutional right to trial by
jury because that right does not extend to the assessment of punishment. Allen, 552 S.W.2d at
847; Bullard v. State, 548 S.W.2d 13, 17-20 (Tex. Crim. App. 1977). Points of error four
through eight are overruled.

The judgment of conviction is affirmed.