Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
JERRY ALLEN WOOD,                                    )                  No. 08-03-00342-CR
)
                                    Appellant,                        )                              Appeal from
)
v.                                                                          )                  384th District Court
)
THE STATE OF TEXAS,                                   )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 20030D00725)

O P I N I O N

            Jerry Allen Wood appeals his capital murder conviction. A jury found Appellant guilty, and
the trial court automatically set punishment at life imprisonment as the State did not seek the death
penalty. See Tex.Code Crim.Proc.Ann. art. 37.071, § 1 (Vernon Pamphlet 2004-05). We affirm.
FACTUAL SUMMARY
            Jaime Vasquez is employed by a maintenance cleaning company, Roman Building Services,
which has a contract with Trinity First United Methodist Church in El Paso. On Sunday, August 19,
2001, Vasquez arrived at the church at 6:30 a.m. to pick up trash in the parking lot and be available
in the event of any maintenance or mechanical problems during services. He noticed a spill in front
of the double doors and walked around it with the intention to come back later and clean it up. He
did not know what the spill was but assumed it was soda. He went inside the church and turned on
the lights, and helped the camera operator, Don Dots, carry some cameras into the sanctuary. 
Vasquez then went out to the parking lot and picked up trash. As he walked around the area, he
noticed drag marks leading from the spill towards the dumpster in the alley. Curious about what
might have been placed in the dumpster, Vasquez lifted the lid and saw a body inside of the
dumpster. He immediately told Dots what he had found, and Dots called 911. 
            Police responded to the scene and found the badly beaten body of a man later identified as
Ismael Navarro. Navarro’s pants had been pulled down to his ankles and the pants pockets had been
pulled inside-out. Navarro was shoeless but police found a bloody left tennis shoe on top of the
church and a right tennis shoe on a building located across the street. Police found a bloody shoe
print near the large puddle of blood located in front of the church. 
            Dr. Corinne Stern performed the autopsy on August 20, 2001. Navarro was 5 feet 3 inches
tall and weighed 144 pounds. He had bruising around his left eye and cuts to his left upper and
lower eyelids caused by blunt force trauma. She found an abrasion on his right upper cheek and
multiple abrasions on the right side of his lips and lower gum. There were also lacerations on
Navarro’s nose and head. Stern found bruising and abrasions on Navarro’s back including “brush
abrasions” which were consistent with his body having been dragged. During the internal
examination of Navarro’s brain, Stern found both subdural and subarachnoid hemorrhage caused by
blunt force trauma. Those injuries could have been caused by being punched, kicked, or stomped. 
Navarro also had multiple broken ribs on both sides of the rib cage and mesenteric hemorrhage. 
Dr. Stern found hemorrhaging around the thyroid gland and in the neck musculature. The injuries
to Navarro’s neck and torso were consistent with someone stomping on these areas of the body while
he was on the ground. The autopsy also revealed that Navarro had cirrhosis of the liver and was in
the end stages of alcoholic liver disease. At the time of his death, Navarro’s blood alcohol was .25,
or three times the legal limit. Dr. Stern determined that Navarro died as the result of multiple blunt
force injuries to the head, neck, and torso as the result of a physical assault.
            Rogelio Samaniego worked at the Opportunity Center for the Homeless. He met Appellant,
Kevin Boyer, and Navarro while he worked there. On August 20, 2001, Appellant entered
Samaniego’s office at 7:30 a.m. and said that he wanted to speak with him. Samaniego told him to
come back later. At around 11 a.m., Appellant returned and appeared extremely nervous. He told
Samaniego that he “had hurt somebody pretty bad, that he had thought that he had hurt his friend.” 
He and Boyer were drinking with Navarro, and Boyer became angry because Navarro would not
share his money. Boyer started punching Navarro. Navarro fought back at first but when he fell to
the ground, Boyer started kicking him. Boyer asked Appellant to help, so he kicked Navarro three
times and he used his foot to crush Navarro’s neck. Appellant also jumped on Navarro’s head and
kicked his face until he stopped moving. He and Boyer searched Navarro’s pockets and found only
$1.50. Appellant gave the money to Boyer and they put Navarro in a dumpster. Appellant told
Samaniego that Billy Hunter was “chicken for not helping.” Appellant pointed out to Samaniego
that he had blood on his shoes. Samaniego gave him a toothbrush to clean the shoes. He later told
his supervisor, Edward Brown, about Appellant’s story. 
            Detective David Samaniego investigated Navarro’s murder. He spoke with people in the area
near the church but did not obtain any leads. Two days after the discovery of Navarro’s body, an
anonymous person called Crimestoppers and reported that two people at the Opportunity Center had
been discussing the murder. Samaniego and another detective went to the Opportunity Center and
spoke with Appellant. Appellant voluntarily accompanied detectives to the Crimes Against Persons
office to talk with them and he gave them a written statement. He also gave them a blood specimen. 
            According to his statement, Appellant met Navarro at the Opportunity Center and had known
him for about two weeks. On Saturday, August 19, Appellant and a friend, Billy,


 went to the public
library in the morning. Later, they ran into another friend, Kevin Boyer and his mother. The four
of them spent the remainder of the day and early evening at two downtown bars. Sometime during
the evening, they left the bar and walked towards the motel where Boyer was staying. They saw
Navarro and he began walking with them. When they reached the church, Appellant stepped aside
to urinate near the wheel chair access ramp. Appellant then saw Boyer beating Navarro. When
Appellant later walked by, he saw Navarro’s bloody face and could hear a gurgling sound. Boyer
told Appellant to look for the police, so he walked up the alley to the street while Boyer dragged
Navarro by his feet over to the dumpster. Appellant heard a loud thump and assumed that Boyer
threw Navarro in the dumpster. Boyer then opened the doors to the dumpster and appeared to be
“doing something.” After he left the dumpster, Boyer tossed a light-colored tennis shoe onto the roof
of the building. The two walked back to Boyer’s motel room and watched a movie. Boyer showed
his bloody tennis shoes to Appellant but he looked away. The following day, Appellant and Billy
returned to the Opportunity Center where they learned that Navarro was dead. Later at the library,
Boyer told Appellant not to say anything.
            Appellant also gave a second written statement in which he admitted participating in the
assault on Navarro. He maintained that he had no idea that Boyer was going to assault Navarro and
he got involved only because the victim fought back. In this second statement, Appellant admitted
that he helped Boyer put Navarro in the dumpster and threw one of the shoes onto a building. 
Appellant was still wearing the same pants and shoes he had worn on the night of the assault. Police
obtained the shirt Appellant had worn during the assault from the Opportunity Center. 
            Physical evidence corroborated Appellant’s oral and written statements and tied him to
Navarro’s murder. Fingerprints found on the dumpster matched Appellant’s fingerprints. Navarro’s
DNA was found on the shoes retrieved from the nearby rooftops and on Appellant’s shirt worn
during the assault. A partial profile of Navarro’s DNA was found on Appellant’s shoes. 
Additionally, the victim’s DNA was found on the sole of a shoe seized from Boyer’s motel room. 
            The defense presented testimony from a single witness that Rogelio Samaniego was not a
truthful person. This witness was impeached by evidence that her sister was fired from the
Opportunity Center after Samaniego’s girlfriend accused her of recklessly driving one of the
Opportunity Center’s vehicles. 
            A psychologist evaluated Appellant and determined that his IQ was 79, which is below
normal. But Appellant was not mentally retarded and he read at a fourth or fifth grade level. 
            The court’s charge authorized the jury to convict Appellant of capital murder as a primary
actor if it found beyond a reasonable doubt that he intentionally caused the death of the victim while
in the course of committing or attempting to commit aggravated robbery. The charge also authorized
the jury to convict Appellant as a party if it found that Appellant, acting with intent to promote or
assist the commission of the offense, solicited, encouraged, directed, aided or attempted to aid
Boyer’s commission of the offense. The jury found Appellant guilty of capital murder as alleged in
the indictment. Because the State did not seek the death penalty, the trial court automatically set
punishment at life imprisonment. 
SUFFICIENCY OF THE EVIDENCE
            In his first four points of error, Appellant challenges the legal and factual sufficiency of the
evidence to support two elements of capital murder: (1) that he formed the intent to commit robbery
prior to or during the murder; and (2) that he intended to cause Navarro’s death. The State responds
that Appellant’s arguments fail to address his conviction as a party.
Standards of Review
            In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must
review all the evidence, both State and defense, in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991), overruled on
other grounds, Paulson v. State, 28 S.W.3d 570 (Tex.Crim.App. 2000). This familiar standard gives
full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh
the evidence, and to draw reasonable inferences from basic to ultimate facts. Jackson, 443 U.S. at
319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. We do not resolve any conflict of fact or assign credibility
to the witnesses, as it was the function of the trier of fact to do so. See Adelman v. State, 828 S.W.2d
418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991).
Instead, our duty is only to determine if both the explicit and implicit findings of the trier of fact are
rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict.
Adelman, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor
of the verdict. Matson, 819 S.W.2d at 843. Further, the standard of review is the same for both
direct and circumstantial evidence cases. Geesa, 820 S .W.2d at 158.
            In reviewing the factual sufficiency of the evidence to support a conviction, we are to view
all the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). Evidence is
factually insufficient if it is so weak that it would be clearly wrong and manifestly unjust to allow
the verdict to stand, or the finding of guilt is against the great weight and preponderance of the
available evidence. Johnson, 23 S.W.3d at 11. Therefore, the question we must consider in
conducting a factual sufficiency review is whether a neutral review of all the evidence, both for and
against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the fact finder’s determination, or the proof of guilt, although adequate if taken alone,
is greatly outweighed by contrary proof. See id. In performing this review, we are to give due
deference to the fact finder's determinations. See id. at 8-9; Clewis, 922 S.W.2d at 136. The fact
finder is the judge of the credibility of the witnesses and may “believe all, some, or none of the
testimony.” Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). Consequently, we may
find the evidence factually insufficient only where necessary to prevent a manifest injustice from
occurring. See Johnson, 23 S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App.
1997).
Elements of Capital Murder and the Law of Parties
            A person commits capital murder if he commits murder as defined by Section 19.02(a)(1)
of the Penal Code and he intentionally commits the murder in the course of committing or attempting
to commit robbery. See Tex.Penal Code Ann. §§ 19.02(a)(1), 19.03(a)(2)(Vernon 2003 & Vernon
Supp. 2004-05). Proof of a robbery committed as an afterthought and unrelated to a murder will not
support a capital murder conviction. Moody v. State, 827 S.W.2d 875, 892 (Tex.Crim.App. 1992);
Cameron v. State, 925 S.W.2d 246, 249 (Tex.App.--El Paso 1995, no pet.). The State must prove
a nexus between the murder and the theft. Cameron, 925 S.W.2d at 249. That is, that the defendant
committed the murder in order to facilitate the taking of property. Moody, 827 S.W.2d at 892;
Cameron, 925 S.W.2d at 249. The ultimate question is whether any rational trier of fact would be
justified in finding, from the evidence as a whole, that the defendant intended to take his victim’s
property before, or as the murder occurred. Nelson v. State, 848 S.W.2d 126, 131-32
(Tex.Crim.App. 1992). The evidence is sufficient to prove murder in the course of committing
robbery in a capital murder case if the State proves that the robbery occurred immediately after the
murder. Cooper v. State, 67 S.W.3d 221, 223 (Tex.Crim.App. 2002).
            The law of parties is applicable to capital murder cases. Johnson v. State, 853 S.W.2d 527,
534 (Tex.Crim.App. 1992); Cameron, 925 S.W.2d at 249. Under the law of parties, a person is
criminally responsible for an offense committed by the conduct of another if, acting with intent to
promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts
to aid the other person’s commission of the offense. Tex.Penal Code Ann. § 7.02(a)(2)(Vernon
2003). In determining whether the accused participated as a party, the court may look to events
occurring before, during, and after the commission of the offense, and may rely on the actions of the
defendant which show an understanding and common design to do the prohibited act. Cordova v.
State, 698 S.W.2d 107, 111 (Tex.Crim.App. 1985). While the presence of an accused at the scene
of an offense is not alone sufficient to support a conviction, it is a circumstance tending to prove
guilt, which, when combined with other facts, may suffice to show that the accused was a participant. 
Beardsley v. State, 738 S.W.2d 681, 685 (Tex.Crim.App. 1987); Cameron, 925 S.W.2d at 249. In
order to impose culpability as a party to the offense of capital murder, the State must prove that
Boyer committed a capital murder, and that Appellant, acting with intent to promote or assist the
capital murder, aided, encouraged or solicited Boyer to commit the capital murder. See Cameron,
925 S.W.2d at 249. The evidence must show that at the time of the offense, the parties were acting
together, each doing some part of the execution of the common purpose. Cordova, 698 S.W.2d at
111; Cameron, 925 S.W.2d at 249.
            Taken in the light most favorable to the verdict, the evidence showed that Boyer, Appellant
and Navarro were drinking together on the evening of the murder. Appellant told Rogelio
Samaniego that Boyer began assaulting Navarro because he refused to share his money. When Boyer
struggled with Navarro and asked Appellant for assistance, Appellant kicked Navarro’s torso three
times to “settle him down” and continued to kick and stomp Navarro’s body, throat, and head. 
Appellant described how he crushed Navarro’s throat with his foot and kicked his face until he
stopped struggling. Appellant and Boyer both searched Navarro’s pockets and Appellant gave him
the small amount of money that he found. Acting together, they disposed of Navarro’s body and
threw his shoes atop nearby buildings. This evidence is legally sufficient to prove beyond a
reasonable doubt that Boyer committed capital murder


 and Appellant, acting with intent to promote
the capital murder, aided and encouraged Boyer’s commission of the offense.
            There is also factually sufficient evidence to support Appellant’s conviction as a party. 
Appellant gave two written statements to Detective Samaniego and made an oral statement to
Rogelio Samaniego. In his first written statement, Appellant did not admit participating in the
assault or robbery, but subsequently gave a second statement in which he admitted active
participation in the assault. In the second statement, Appellant insisted that he did not know that
Boyer was going to attack Navarro. He also said that he did not intend to kill Navarro. However,
Appellant told Rogelio Samaniego that Boyer began assaulting Navarro when he refused to share
his money, and Appellant participated in the assault by kicking and stomping Navarro when the
victim fought back and Boyer asked for assistance. Appellant kicked and stomped Navarro until he
stopped struggling. Appellant also admitted to Rogelio Samaniego that he took money from
Navarro’s pockets and gave it to Boyer. While the jury heard evidence impeaching Rogelio
Samaniego’s credibility, the description of the assault and the subsequent robbery is corroborated
by the physical evidence. The jury’s resolution of the conflicts in the evidence and its assessment
of the credibility of the witnesses is not contrary to the overwhelming weight of the evidence. We
find that the evidence is factually sufficient to support Appellant’s conviction as a party to capital
murder. Points of Error One through Four are overruled.



RESTRICTION OF CROSS-EXAMINATION
            In Issue Five, Appellant argues that the trial court abused its discretion by not allowing him
to cross-examine Rogelio Samaniego “about his ‘homeless’ years at the Center” in order to “dig into
any possible biases Rogelio may have had” against Appellant. The record does not reflect that
Appellant attempted to ask these questions or that the trial court restricted his cross-examination of
the witness.


 As a general rule, a party must make his complaint known to the trial court by a timely
request, objection, or motion which states specific grounds for the ruling that the party desires the
court to make. See Tex.R.App.P. 33.1. In order to preserve error in the exclusion of evidence, the
substance of the evidence must be made known to the trial court by offer of proof unless the
substance is apparent from the context in which the questions are asked. Tex.R.Evid. 103(a)(2).
Further, Rule 33.2 of the Rules of Appellate Procedure requires a party to make a bill of exception
about a matter that would not otherwise appear in the record. Tex.R.App.P. 33.2. When, as in this
case, there is no bill of exception or offer of proof to show the facts Appellant could have proved
through cross-examination of an adverse witness, the issue has not been preserved for appellate
review. See Love v. State, 861 S.W.2d 899, 900-01 (Tex.Crim.App. 1993); Easterling v. State, 710
S.W.2d 569, 578 (Tex.Crim.App. 1986). Because Appellant failed to preserve this complaint, we
overrule Point of Error Five.
LESSER-INCLUDED OFFENSE
            In Points of Error Six and Seven, Appellant asserts that the trial court by denying his
requested instructions on the lesser-included offenses of aggravated assault and manslaughter. To
determine whether he was entitled to a charge on the lesser-included offense, we apply a
two-pronged test. Rousseau v. State, 855 S.W.2d 666, 672 (Tex.Crim.App. 1993); Avila v. State,
954 S.W.2d 830, 842 (Tex.App.--El Paso 1997, pet. ref’d). First, the lesser-included offense must
be included within the proof necessary to establish the offense charged. Rousseau, 855 S.W.2d at
672; Avila, 954 S.W.2d at 842. Second, there must be some evidence in the record that would permit
a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense.
Rousseau, 855 S.W.2d at 672; Avila, 954 S.W.2d at 842. In other words, there must be some
evidence from which a jury could rationally acquit the defendant of the greater offense while
convicting him of the lesser-included offense. Mathis v. State, 67 S.W.3d 918, 925 (Tex.Crim.App.
2002). The evidence must establish the lesser-included offense as a valid rational alternative to the
charged offense. Wesbrook v. State, 29 S.W.3d 103, 113 (Tex.Crim.App. 2000).
            As noted by both the State and Appellant, aggravated assault and manslaughter are lesser-included offenses of capital murder. See Mathis, 67 S.W.3d at 925 (manslaughter); Hernandez v.
State, 969 S.W.2d 440, 446 (Tex.App.--San Antonio 1998, pet. ref’d)(aggravated assault). 
Therefore, the first prong of the test is met.
            The remaining question is whether there is evidence that Appellant was guilty only of
manslaughter or aggravated assault, either individually or as a party. The only evidence identified
by Appellant as raising these lesser-included offenses is the assertion made in his second written
statement that he did not intend to kill Navarro but only hit him to stop him from fighting back. A
person commits manslaughter if he recklessly causes the death of an individual. Tex.Penal Code
Ann. § 19.04. A person acts recklessly, or is reckless, with respect to circumstances surrounding
his conduct or the result of his conduct when he is aware of but consciously disregards a substantial
and unjustifiable risk that the circumstances exist or the result will occur. Tex.Penal Code Ann.
§ 6.03(c). The risk must be of such a nature and degree that its disregard constitutes a gross
deviation from the standard of care that an ordinary person would exercise under all the
circumstances as viewed from the actor’s standpoint. Id. Appellant was not entitled to a
manslaughter instruction unless there was evidence from which the jury could rationally find that
either he or Boyer did not act intentionally or knowingly but only acted recklessly with respect to
killing Navarro. See Mathis, 67 S.W.3d at 926.
            The medical and physical evidence establishes that Navarro died as the result of a brutal
beating. Appellant admitted in his written statement and in his conversation with Rogelio
Samaniego that he participated in that assault by crushing Navarro’s neck with his foot, by stomping
on his body to “settle him down,” by stomping on his head, and by kicking him in the face until he
stopped struggling. Appellant and Boyer then searched Navarro’s pockets for money and callously
threw Navarro’s body in a dumpster. The only evidence that this violent assault was merely reckless,
not intentional and knowing, is Appellant’s own assertion that he did not intend to kill Navarro. This
type of self-serving statement, standing alone, is insufficient to raise the lesser-included offense of
manslaughter because it is not evidence from which a jury could rationally find that the actions of
Appellant or Boyer toward Navarro were not intentional or knowing but were merely reckless. See
Mathis, 67 S.W.3d at 926.
            Appellant also asserts that he was entitled to an instruction on aggravated assault. A person
commits aggravated assault if he intentionally, knowingly, or recklessly causes serious bodily injury



to another person. Tex.Penal Code Ann. § 22.02. Appellant’s assertion that he participated in the
assault but did not intend to kill Navarro does not raise the lesser-included offense of aggravated
assault. See Wesbrook, 29 S.W.3d at 113-14 (capital murder defendant’s self-serving testimony that
he fired rifle at victims but did not intend to cause their deaths did not raise lesser-included offense
of aggravated assault). Points of Error Six and Seven are overruled. Having overruled each of the
points of error raised on appeal, we affirm the judgment of the trial court.

February 10, 2005                                                       
                                                                                    ANN CRAWFORD McCLURE, Justice
Before Panel No. 2
Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)