COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
            
                   
                         NOS. 
 2-04-121-CR
            
                   
                                   
2-04-122-CR
 
 
WILLARD 
THOMAS CHRISTMAS                                             APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE 97TH DISTRICT COURT OF MONTAGUE COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellant 
Willard Thomas Christmas was found guilty by a jury on two counts of tampering 
with evidence.  Appellant appeals his conviction, arguing that the trial 
court erred in refusing to charge the jury on the affirmative defense of 
duress.  We affirm.
Background
        In 
October of 2001, Appellant and four companions left Missouri and headed for San 
Antonio, Texas.  The group included Appellant’s half-sister, Chrystal 
Soto, her boyfriend, Charles Jordan[2], and 
Appellant’s girlfriend, Lisa Creed.  During the trip they stopped in 
Bowie, Texas, where Appellant’s grandparents lived.  Appellant’s 
grandfather allowed the group to stay on his property while they worked locally 
in the area to earn money for the remainder of their trip.  About two weeks 
after the group arrived in Bowie, Appellant’s grandfather began receiving 
complaints about gunshots late at night coming from the area where the group was 
staying.  When Appellant’s grandparents told the group to leave, Charles 
Jordan shot both Appellant’s grandmother and grandfather.  Afterwards, 
Appellant helped Jordan and Soto bury the bodies and destroy evidence at the 
crime scene.  Specifically, Appellant helped put both his dead grandparents 
into the back of a truck, drive to the rear of the property, dig a grave, and 
place the bodies in the grave.  Appellant also burned the sheets used to 
wrap the bodies; the shovel, axe, and hoe used to dig the graves; and his 
grandmother’s purse.  Appellant argues that he did so out of fear that 
Jordan would injure him.  Thereafter, Appellant left Bowie with the others 
and headed to Washington, where they were arrested.
Duress
        In 
his sole point, Appellant contends that the trial court erred in refusing to 
charge the jury on the affirmative defense of duress.  Specifically, 
Appellant argues that he was entitled to the instruction because he engaged in 
the proscribed conduct in response to threats of imminent death or serious 
bodily injury at the hands of Jordan.  The evidence and Appellant’s own 
statements, however, foreclosed the availability of an instruction on duress 
because he repeatedly made clear he was acting on his own and that his fear did 
not culminate from Jordan’s actions.
        A 
defendant is entitled to an instruction on every defensive issue raised by the 
evidence regardless of the strength of the evidence.  Brown v. State, 
955 S.W.2d 276, 279 (Tex. Crim. App. 1997).  This is true “regardless of 
whether [the evidence] is strong, feeble, unimpeached, or contradicted, and even 
if the trial court is of the opinion that the [evidence] is not entitled to 
belief,” id., because the rule “is designed to insure that the jury, 
not the judge, will decide the relative credibility of the evidence.”  Granger 
v. State, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999); see also Woodfox v. 
State, 742 S.W.2d 408, 409-10 (Tex. Crim. App. 1987) (“When a judge 
refuses to give an instruction on a defensive issue because the evidence 
supporting it is weak or unbelievable, he effectively substitutes his judgment . 
. . for that of the jury.”).
        In 
this case, however, the evidence fails to raise the affirmative defense of 
duress, which applies when the accused “engaged in the proscribed conduct 
because he was compelled to do so by threat of imminent death or serious bodily 
injury to himself or another.”  Tex. 
Pen. Code Ann. § 8.05(a) (Vernon 2003).  To raise the defense, the 
evidence must show both compulsion and imminency.  Compulsion “exists 
only if the force or threat of force would render a person of reasonable 
firmness incapable of resisting the pressure,” and imminency exists where the 
person making the threat intends and is prepared to carry out the threat 
immediately on the accused’s failure to commit the charged offense.  Tex. Pen. Code Ann. § 8.05(c); Anguish 
v. State, 991 S.W.2d 883, 886 (Tex. App.—Houston [1st Dist.] 1999, pet. 
ref’d) (holding threat of future harm cannot be construed as “imminent” 
under the statute).
        Thus, 
to prevail Appellant would have to provide some evidence that Jordan threatened 
him with force capable of causing “imminent death or serious bodily injury” 
that would render a person of reasonable firmness incapable of resisting.  See 
Tex. Pen. Code Ann. § 8.05(c); Kessler 
v. State, 850 S.W.2d 217, 221-22 (Tex. App.—Fort Worth 1993, no 
pet.).  Appellant contends that the following evidence and testimony 
offered at trial establishes the threat of force: 1) Jordan was still in 
possession of the gun after committing the murder; 2) Appellant testified he was 
scared that he would be implicated in the murders and was “going to fry”; 3) 
Jordan was larger in size than Appellant; 4) Jordan was holding and using an axe 
near Appellant while commanding him to dig a hole; 5) Appellant testified of his 
fear of digging the hole too deep to accommodate both him and his grandparents; 
6) Jordan had access to a knife when he told Appellant to burn evidence of the 
murders; and 7) Jordan remained in control of Appellant by controlling the 
group’s money and keeping Appellant close to him.  We disagree and find 
the evidence shows neither compulsion nor imminency.
        In 
this case, the record contradicts Appellant’s claim that threat of force by 
Jordan compelled him to commit the criminal acts.  Appellant testified that 
Jordan was telling him what to do and he was doing it. Duress cannot be raised 
unless there is evidence of a specific, objective threat, and the mere taking of 
orders from another is insufficient to raise the duress defense.  Cameron 
v. State, 925 S.W.2d 246, 250 (Tex. App.—El Paso, 1995, no pet.).  In 
a statement made to police after his arrest, Appellant indicated that he was not 
scared of Jordan.  Moreover, Appellant testified to the following:
   
[Counsel]: Okay. Do you recall anything that either Mr. Jordan or your sister 
said at that time?
  
[Appellant]: 
I didn’t hear my sister say anything. Jordan told me to grab the rings off her 
fingers.
  
[Counsel]: 
How did he tell you to grab the rings off of her finger?
  
[Appellant]: 
He said that mean like - - he didn’t say how, but you could hear it in his 
use. He said, Grab the rings.
  
[Counsel]: 
Were you threatened by Charles Jordan when he ordered you to remove the rings 
from your grandmother’s hand?
  
[Appellant]: 
Yeah. I felt like I had to do it.
  
[Counsel]: 
What did you think would happen if you didn’t do it?
  
[Appellant]: 
I figured because me and Chrystal were the only two that seen anything, that if 
I would have told him no or anything like that, that he - - it wouldn’t have 
bothered him to take action towards me.
  
[Counsel]: 
Was the threat communicated to you in any other way?
  
[Appellant]: 
He was sitting there and he was kind of rocking and he was - - he never said 
that he was going to hurt me, just come out. But I knew that if I didn’t do 
that, that he would.
  
        During 
cross-examination by the State, Appellant was asked, “did Chuck Jordan - - or 
for that matter anybody else - - ever tell you, you’re going to do these 
things or you’re going to get hurt?”  Appellant responds “Not in so 
many words, no.”  The testimony continued as follows:
 
[State]: He didn’t threaten to kill you, or break your finger, or stomp your 
toe if you didn’t do those things, did he?
  
[Appellant]: 
No, he didn’t.  He didn’t threaten to kill me, no.
  
[State]: 
Never had a weapon in his hand drawn back to hit you, did he?
  
[Appellant]: 
No.  He had one close by, though.
  
[State]: 
Never grabbed you by the hair of the head or by your arm and said, Do this, did 
he?
  
[Appellant]: 
No.  He never grabbed ahold of me, no.
  
 
        Appellant’s 
claim of duress relies solely on his own testimony, in which he states he 
destroyed evidence because he was told to by Jordan and that he did not feel 
like he had any choice.  The fact that Appellant was allegedly taking 
orders from another is not sufficient to raise the defense of duress.  See 
Cameron v. State, 925 S.W.2d at 250.  Without evidence of a specific, 
objective threat, Appellant’s testimony about his vague and subjective fears 
is insufficient as a matter of law to support an instruction on duress.  Id; 
Bernal v. State, 647 S.W.2d 699, 706 (Tex. App.—San Antonio 1982, no 
pet.) (holding defendant’s testimony that he feared co-defendant “might get 
violent” insufficient to support duress instruction).  A review of the 
record does not indicate a single instance of a threat by Jordan to 
Appellant.  The fact alone that Jordan was larger in size than Appellant or 
that Jordan had access to a weapon, without more, is insufficient to raise the 
defense of duress.  Thus, it was not error for the trial court to refuse to 
submit it.  Accordingly, we overrule Appellant’s sole point.
Conclusion
        We 
hold that there was no error in the trial court’s refusal to instruct the jury 
on the affirmative defense of duress.  Having overruled Appellant’s sole 
point, we affirm the judgment of the trial court.
   
  
                                                                  PER 
CURIAM
  

  
PANEL 
A: HOLMAN, J.; CAYCE, C.J.; and WALKER, J.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
March 3, 2005


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Appellant also refers to Charles Jordan as “Chuck”.