NO. 07-07-0259-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

DECEMBER 29, 2008

______________________________


TIMOTHY SHAWN MAJORS, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE


_________________________________

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 53,992-E; HON. ABE LOPEZ, PRESIDING

_______________________________

Before CAMPBELL, HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Appellant, Timothy Shawn Majors, was convicted, after a jury trial, of the offense of
unlawful possession of a firearm by a felon, enhanced by two prior felony convictions. The
same jury found the allegations of both prior felony convictions to be true and sentenced
appellant to 78 years in the Institutional Division of the Texas Department of Criminal
Justice. Appellant contends through three issues that the judgment of the trial court should
either be reversed and remanded or a judgment of acquittal should be entered. 
Disagreeing, we will affirm the trial courtâs judgment.
Factual and Procedural Background
Â Â Â Â Â Â Â Â Â Â On July 1, 2006, appellant and Alicia Choudry were at an after hours club in
Amarillo, Texas. Before the incident in question, appellant and Choudry had previously
had a relationship that had terminated. Appellant and Choudry had a disagreement inside
the club and Choudry went outside. Appellant came out and another exchange of words
occurred. Choudry, who had been sitting on a car, stood up and stepped toward appellant
who then slapped her. Choudry told appellant that she was going to call the police. At that
time, appellant went to a vehicle, identified as belonging to his girlfriend, and retrieved,
what was described by Choudry, as a gun. According to Choudry, appellant was waving
the gun around daring Choudry to call the police. Choudry left the scene after appellant
began waving the gun around.
Â Â Â Â Â Â Â Â Â Â Choudry went to the police and gave a statement on July 10, 2006. In that
statement, Choudry recounted the events of July 1, 2006, and identified the gun appellant
was waving as a black and white semi-automatic, similar to the gun possessed by the
officer who took her statement. The day after Choudry gave her statement, she returned
to the police with Lillian Gentry. Gentry executed a statement that corroborated the facts
given in Choudryâs statement. Subsequently, both Choudry and Gentry executed other
statements recanting their original statements. Prior to trial, another witness, Stacy Jones,
came forward claiming to have been present at the scene and further stating that appellant
did not ever have a gun on the night in question. However, Jones later testified that she
was not present at the club on the night of the incident and that appellant had asked her
to give a statement saying she was present. 
Â Â Â Â Â Â Â Â Â Â Prior to trial, appellant filed a motion in limine requesting that the State be required
to approach the bench prior to any testimony about an alleged incident of retaliation toward
Choudry. The court granted the motion. Additionally, appellant had filed a pre-trial motion
for notice of the Stateâs intent to use evidence of extraneous offenses. In response, the
State filed a notice of intent to use the retaliation evidence. However, the Stateâs notice
was filed the day voir dire began. During Choudryâs testimony, appellant vigorously cross-examined her and assailed her credibility through the production of two other statements
signed by her that recanted most of her original statement. Because appellant was also
able to show that he was Choudryâs immediate supervisor at work, appellant further
attacked Choudryâs credibility and questioned her about appellant having reprimanded her
at work. As a result of the cross-examination of Choudry, the State approached the bench
and requested permission to question Choudry about the retaliation incident. After hearing
the evidence outside the presence of the jury, the trial court allowed the testimony. This
testimony showed that, after the charges had been filed against appellant, Choudry was
at the club where the incident occurred and met up with appellant and his then girlfriend. 
Choudry testified that appellant had his girlfriend fight Choudry and, as a result, Choudry
was beaten. 
Â Â Â Â Â Â Â Â Â Â After hearing all of the evidence, the jury convicted appellant of the charge of felon
in possession of a firearm. Prior to commencing the punishment phase of the trial,
appellant filed a motion to quash the second enhancement paragraph. The State agreed
that it could not use that offense as an enhancement and requested permission to use
another felony as the second enhancement. Appellant objected claiming that the State
was attempting to amend the indictment. After hearing argument, the trial court granted
a one day recess to appellant. The next day, the trial court ruled that the State could use
the other felony conviction as the second enhancement, to which appellant pled âNot True.â 
The jury found that the enhancements were true and assessed a sentence of 78 years
confinement. Appellant subsequently gave notice of appeal.
Â Â Â Â Â Â Â Â Â Â Through three issues, appellant contends that: 1) the evidence is legally and
factually insufficient to sustain the judgment of conviction, 2) the trial court erred in
admitting the evidence of retaliation in violation of Rule 404(b) of the Texas Rules of
Evidence, and 3) the trial court erred in permitting the State to amend the second
enhancement paragraph of the indictment after the trial had commenced. We disagree
with appellant and will affirm the judgment of the trial court.
Sufficiency of the Evidence
Â Â Â Â Â Â Â Â Â Â Appellant contends that the evidence was not legally nor factually sufficient to
sustain the conviction. When both legal and factual sufficiency are attacked, we must first
address the issue of legal sufficiency. See Clewis v. State, 922 S.W.2d 126, 133
(Tex.Crim.App. 1996). If the evidence is legally sufficient, we then review the factual
sufficiency challenge. See id. In assessing the legal sufficiency of the evidence, we review
all the evidence in the light most favorable to the verdict to determine whether any rational
trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross
v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). In conducting a legal sufficiency
review, an appellate court may not sit as a thirteenth juror, but rather must uphold the juryâs
verdict unless it is irrational or unsupported by more than a mere modicum of evidence. 
Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).
Â Â Â Â Â Â Â Â Â Â When an appellant challenges the factual sufficiency of the evidence supporting his
conviction, the reviewing court must determine whether, considering all the evidence in a
neutral light, the jury was rationally justified in finding the appellant guilty beyond a
reasonable doubt. See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In
performing a factual sufficiency review, we must give deference to the fact finderâs
determinations if supported by evidence and may not order a new trial simply because we
may disagree with the verdict. See id. at 417. As an appellate court, we are not justified
in ordering a new trial unless there is some objective basis in the record demonstrating that
the great weight and preponderance of the evidence contradicts the juryâs verdict. See id. 
Additionally, an appellate opinion addressing factual sufficiency must include a discussion
of the most important evidence that appellant claims undermines the juryâs verdict. Sims
v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).
Â Â Â Â Â Â Â Â Â Â To convict someone of the offense of felon in possession of a firearm, the State
must prove that 1) appellant, 2) intentionally or knowingly, 3) possessed a firearm, 4) away
from the premises where appellant resided, and 5) that appellant had been previously
convicted of a felony offense. See Tex. Penal Code Ann. Â§ 46.04(a)(2) (Vernon 2004).


 
A review of appellantâs brief indicates that appellant is either claiming the evidence is
insufficient as to the possession element of the offense or that the evidence is insufficient
to prove that what appellant had in his possession was a firearm. This observation is made
because appellant cites the court to several cases that deal with proof of possession where
the defendantâs possession of the contraband item was not exclusive or more than one
person had access to the contraband. See Coleman v. State, 188 S.W.3d 708, 720-21
(Tex.App.âTyler 2005, pet. refâd). However, the record is clear about one aspect of the
case, there is no evidence that the item possessed by appellant was in the care, custody,
or control of anyone else. For this reason, those cases cited by appellant are not relevant
to our determination of the case. The sole issue at trial and on appeal is, did appellant
have a firearm in his hands on the occasion in question. Appellant, through cross-examination of the witnesses presented by the State, attempted to prove that the primary
witness, Choudry, was mad at appellant and had invented the allegation that appellant had
a firearm in his hands at the time of the incident in question. Further, through cross-examination of both Choudry and Gentry, appellant attempted to show the jury that each
had lied on their original statements and had subsequently executed additional statements
recanting those portions of the original statement that alleged appellant had a handgun in
his possession on the night in question. Further, appellantâs contention is that the evidence
regarding the item in his hand on the night in question is not legally or factually sufficient
to meet the definition of a firearm under the Texas Penal Code. See Â§ 46.01(3).


 
Â Â Â Â Â Â Â Â Â Â A review of the evidence reveals that both Choudry and Gentry admitted signing
more than one statement. However, Choudry testified that the first statement was a
truthful account of the events on the evening in question. Although she was vigorously
cross-examined, she maintained that appellant did have in his possession a gun. She
described the gun as being like the one the officer who took her statement had, only
smaller. The officer who took Choudryâs original statement testified that, at the time of the
statement, he carried a black Sig Sauer model 220 that was black with a silver slide. While
admitting she had made subsequent statements that seemed to contradict both her
testimony in court and the original statement, Choudry alleged she signed the subsequent
statement because of fear of appellant. After the cross-examination of Choudry, the State
presented evidence of an alleged attempt at retaliation directed toward Choudry by
appellant. This testimony was that appellant had directed his then current girlfriend to
challenge Choudry to a fight. The testimony was that appellant was present when the fight
occurred and was encouraging his girlfriend throughout the fight. As a result of the fight,
Choudry was beaten. 
Â Â Â Â Â Â Â Â Â Â Gentry originally gave a statement that said that appellant had in his possession a
gun that looked like the one the officer who took her statement had on his person. The
same officer took both statements. However, Gentry gave subsequent statements that
claimed she never saw a gun and that Choudry had told her what to say when she gave
her first statement. Gentryâs testimony was that her subsequent statements were the true
facts that occurred and that she never saw appellant with a gun. 
Â Â Â Â Â Â Â Â Â Â The State was able to produce testimony that appellant was known to carry a gun. 
This testimony came from Choudry and from another former girlfriend of appellant, Stacy
Jones. Jones also testified that, during the time she was appellantâs girlfriend, she
executed a statement claiming to have been present at the scene on the evening in
question and that appellant never had a gun. She testified that those facts were not true
and she had not been at the scene on the evening in question, but that she prepared the
statement at appellantâs specific insistence. 
Â Â Â Â Â Â Â Â Â Â Finally, appellant presented testimony of Clint Haider, his employer, that appellant
was the former supervisor of Choudry. Haider further testified that he had observed
Choudry being insubordinate to appellant. As a result of this incident, Choudry was
reprimanded and was going to be fired, however, she quit before she was terminated. 
According to appellant, this event was the catalyst for Choudryâs attempt to have charges
filed against him.
Â Â Â Â Â Â Â Â Â Â When conducting our legal sufficiency review, we must view the evidence in the light
most favorable to the verdict. Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. The
jury had Choudryâs in-court testimony and her original statement indicating that appellant
had a gun. Viewing this evidence in the light most favorable to the verdict, there is
sufficient evidence that appellant had in his possession on the night in question a gun. 
Further, the testimony regarding the description of the gun was legally sufficient to prove
it was a firearm. See Campbell v. State, 633 S.W.2d 592, 594 (Tex.App.âAmarillo 1982,
pet. refâd). Therefore, we cannot say that the jury acted irrationally in convicting appellant.
Â Â Â Â Â Â Â Â Â Â On the issue of the factual sufficiency of the evidence, the question comes down to
witness credibility. Appellant clearly relies on the conflicting testimony to support his
allegation of factual insufficiency. The credibility of witness testimony is a subject matter
that the jury is uniquely qualified to determine. See Maestas v. State, 963 S.W.2d 151,
156 (Tex.App.âCorpus Christi 1998), affâd, 987 S.W.2d 59 (Tex.Crim.App. 1999). Further,
it is the juryâs duty to resolve the conflicts in the testimony. Id. Finally, simply because the
appellant presents a different version of the facts than the State does not render the
Stateâs case factually insufficient. Id. Giving the requisite deference to the juryâs resolution
of the conflicting evidence, we find that the jury was rationally justified in finding appellant
guilty beyond a reasonable doubt.
Â Â Â Â Â Â Â Â Â Â Having found that the evidence is legally and factually sufficient, we overrule
appellantâs first issue. 
Evidentiary Rulings
Â Â Â Â Â Â Â Â Â Â Appellant next complains about the trial courtâs ruling on two specific evidentiary
matters. In the first instance, appellant complains that the trial court improperly allowed
the State to offer evidence of a subsequent offense committed by appellant toward the
primary witness, Choudry. In the second matter, appellant contends that the trial court
erred in overruling appellantâs motion for mistrial when the witness for the State, during the
guilt or innocence stage, commented that appellant had seven prior convictions. Although
appellant places both fact patterns under one issue, the two issues are not related and will
be treated separately.
Retaliation
Â Â Â Â Â Â Â Â Â Â At a pre-trial hearing, appellant filed a motion in limine requesting the trial court to
order the State to approach the bench prior to eliciting testimony about a number of
different matters. One of the issues covered by the motion in limine was any testimony
about appellantâs alleged retaliation against the primary witness, Choudry. The trial court
ruled that he was granting the motion in limine unless somebody opens the door or
something happens. Subsequently, after extremely vigorous cross-examination of Choudry
that included testimony that she had recanted her original statement in a subsequent
statement, the State requested permission to introduce the evidence about the retaliation
charge against appellant. The State advised the court that the evidence was admissible
to show why Choudry had executed the second statement. The trial court recessed for the
evening after advising the parties he would rule the next morning. When the trial
reconvened the next morning, the trial judge advised the parties he was going to permit the
testimony. Appellant again objected on the grounds of lack of notice pursuant to Rule
404(b). However, appellant never claimed he was surprised by the evidence nor did he
request a continuance. 
Â Â Â Â Â Â Â Â Â Â Appellantâs complaint is that the trial court improperly admitted the evidence of an
extraneous offense before the jury; therefore, we will review the trial courtâs decision under
an abuse of discretion standard. See McDonald v. State, 179 S.W.3d 571, 576
(Tex.Crim.App. 2005). An appellate court should affirm the trial courtâs ruling unless it finds
that the decision is not within the zone of reasonable disagreement. See Green v. State,
934 S.W.2d 92, 102 (Tex.Crim.App. 1996). Stated another way, we will find an abuse of
discretion only when the trial court acted without reference to any guiding rules or principles
by acting arbitrarily or unreasonably. See Lyles v. State, 850 S.W.2d 497, 502
(Tex.Crim.App. 1993).
Â Â Â Â Â Â Â Â Â Â Rule 404(b) provides that evidence of other crimes, wrongs, or acts may be
admissible during the Stateâs case-in-chief, provided that the State has, upon request of
the defendant, provided notice of intent to introduce such evidence. See Tex. R. Evid.
404(b). The record reflects that the State did not give notice of intent to use the evidence
of the retaliation case against appellant until the morning jury selection began. The State
did attempt to show that they had not become fully cognizant of the case until
approximately two weeks prior to trial. Without ruling that the Stateâs explanation of why
the notice was late was sufficient, the trial court admitted the evidence. Based upon this
record, we must conclude that the State failed to give proper notice of intent to use
evidence of extraneous offenses, crimes, or acts and, therefore, the trial court committed
error in admitting the evidence. See Hernandez v. State, 176 S.W.3d 821, 824
(Tex.Crim.App. 2005). This does not, however, mean that the error requires reversal of
the trial courtâs judgment. Rather, we must continue the inquiry and determine whether the
error in admitting the evidence had a substantial and injurious effect in determining the
juryâs verdict. Id. We determine whether the admission had an affect on appellantâs
substantial rights by a Rule 44.2(b) harm analysis for non-constitutional errors. See Tex.
R. App. P. 44.2(b).


 In construing this type of error, we note that Rule 404(b) is a notice
provision aimed at preventing surprise, therefore, when conducting a Rule 44.2(b) analysis
of this type of error, the issue of surprise to appellant is a valid consideration. Hernandez,
176 S.W.3d at 825. As stated above, appellant does not claim he was surprised by the
evidence nor did he, at any time, request a continuance to prepare to defend against the
extraneous evidence. Therefore, as in the Hernandez case, we cannot say that the
admission of the evidence had an injurious effect on the juryâs determination. Id.
Accordingly, appellantâs issue regarding the retaliation evidence is overruled.
Prior Convictions Testimony
Â Â Â Â Â Â Â Â Â Â During the examination of a Potter County Deputy Sheriff regarding fingerprints of
appellant taken for comparison purposes to prove a prior conviction, the same one alleged
for jurisdictional purposes in the indictment, the following colloquy occurred:
Â Â Â Â Â Â Â Â Â Â State: Can you tell the jury what your results yield?

Â 
Witness: Yes, sir. I received a total of seven prior felony convictionsfor an
individual by the name of Timothy Shawn Majors.

Â 
Appellant immediately requested a conference at the bench where the trial court instructed
the State to instruct the witness to limit his testimony to the conviction alleged for
jurisdictional purposes. The trial court advised all parties that he was going to instruct the
jury to disregard the last question and response. The jury was so instructed. Appellant
moved for a mistrial, which the trial court denied. 
Â Â Â Â Â Â Â Â Â Â Based on this factual background, appellant contends that the testimony of the
seven prior convictions was a violation of Rule 404(b) and is, therefore, in error. Appellant
misconstrues the trial courtâs ruling. The trial court did not admit the testimony about the
seven prior convictions, rather, he instructed the jury to disregard the question and
testimony. Additionally, the objection at trial never mentions Rule 404(b) nor can it be
construed to include that objection. This leads to the inevitable conclusion that the issue
on appeal does not comport with the objection at trial. Heidelberg v. State, 144 S.W.3d
535, 537 (Tex.Crim.App. 2004). In such a case, there is nothing preserved for appeal. Id. 
Accordingly, appellantâs issue regarding the testimony of prior convictions is overruled.



Â 
Â 
Indictment
Â Â Â Â Â Â Â Â Â Â Appellant next contends that the trial court erred when it allowed the State to
substitute another of appellantâs felony convictions for the second enhancement paragraph,
after the trial court granted appellantâs motion to quash the second enhancement paragraph
in the original indictment. The record reflects that, after the jury convicted appellant of
unlawful possession of a firearm by a felon, appellant presented a motion to quash the
second enhancement paragraph. The State agreed that the felony conviction listed in the
second paragraph was, in fact, the same felony cited as the jurisdictional conviction for
felon in possession of a firearm and, as such, it was not permissible to use that felony as
a punishment enhancement. The trial court granted the motion to quash. The State then
announced that it was going to substitute another of appellantâs felony convictions for the
second enhancement paragraph. The felony conviction to be substituted was one listed in
the Stateâs Notice of Intention to Use Prior Convictions for Enhancement. Appellant
objected citing lack of notice and that the State was trying to untimely amend the indictment. 
The trial court then granted a continuance until the next morning to give appellant an
opportunity to determine any legal reasons the State should not be allowed to substitute
one of appellantâs other felony convictions for the one listed in the second enhancement
paragraph. The following morning, after again hearing from appellant and the State, the
trial court allowed the substitution of a different final conviction in the second enhancement
paragraph. At no time that morning, either before or after the trial court ruled, did appellant
move for a continuance in order to more properly prepare a defense to the new
enhancement conviction.
Â Â Â Â Â Â Â Â Â Â Appellant contends that the trial court overruled his motion for continuance, however,
the record does not support this contention. As stated above, the record affirmatively shows
that, after the trial court ruled that the State would be allowed to substitute a different final
felony conviction, appellant did not request a continuance. 
Â Â Â Â Â Â Â Â Â Â This becomes important because of the analysis of the Texas Court of Criminal
Appeals in Villescas v. State. See Villescas v. State, 189 S.W.3d 290, 294 (Tex.Crim.App.
2006). In Villescas, the court was dealing with what kind of notice was the State required
to give when using enhancements for punishment. Id. at 293. The intermediate appellate
court had concluded that the notice issue was of non-constitutional origin and, therefore,
when reviewing the action of the trial court, applied the non-constitutional harm analysis of
Texas Rule of Appellate Procedure 44.2(b). Id. at 292. The court determined that notice
was a due process issue and, therefore, of a constitutional nature. Id. at 294. Ultimately,
the court in Villescas decided that notice given prior to the beginning of the punishment
phase satisfies the federal constitutional due process requirement when the defendant has
no defense to the enhancement allegation and has not requested a continuance. Id.
Â Â Â Â Â Â Â Â Â Â Applying the Villescas standard to the case before this court, we find that a one day
continuance was granted after the State first requested permission to substitute a different
felony conviction for the one alleged in the second enhancement paragraph. Further, the
record reflects that the following morning, after the court announced his decision, appellant
never indicated a need for a continuance. In fact, when asked if there was anything else
before bringing in the jury, appellant responded, âNo, Your Honor.â The trial court then
brought the jury in and asked if the State and defense were ready on punishment. 
Appellant replied, without limitation, âDefense is ready, Judge.â After the enhancement
paragraphs were read, appellant pled âNot Trueâ to both paragraphs. The evidence on the
issue was presented. During the entire punishment hearing, appellant presented nothing
that could be construed as a defense to the second enhancement paragraph. Accordingly,
it appears to this court that appellantâs position is exactly the same as that described in
Villescas. Appellant did not request a continuance and had no defense to the second
enhancement paragraph. Therefore, the notice given appellant before the beginning of the
punishment hearing was sufficient. Appellantâs third issue is overruled.
Conclusion
Â Â Â Â Â Â Â Â Â Â Having overruled appellantâs issues, we affirm the judgment of the trial court.
Â 
Mackey K. Hancock

Justice

Â 
Â 
Do not publish.

 

Â 

Â Â 

 



  

Â Â Â Â Â Â Â Â Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â  For a party
to prevail on a motion for summary judgment he must conclusively establish the
absence of any genuine question of material fact and that he is entitled to
judgment as a matter of law.Â  Tex. R.
Civ. P. 166a(c); Browning v. Prostok, 165 S.W.3d 336, 344 (Tex.
2005).Â  A movant must either prove all
essential elements of his claim, MMP,
Ltd. v. Jones, 710 S.W.2d 59 (Tex. 1986), or negate at least one essential
element of the non-movant's cause of action.Â 
Shaw v. Moss, 67 S.W.3d 836 S.W.3d 842 (Tex.
2001); Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644
(Tex. 1995).Â  Once the movant has
established a right to summary judgment, the non-movant has the burden to
respond to the motion for summary judgment and present to the trial court any
issues that would preclude summary judgment.Â 
Casso v. Brand, 776 S.W.2d 551, 556 (Tex.
1989); City of Houston v.
Clear Creek Basin Authority, 589 S.W.2d 671, 678 (Tex. 1979); Barbouti
v. Hearst Corp., 927 S.W.2d 37, 64 (Tex.App.--Houston [1st Dist.] 1996,
writ denied).Â  Issues that the
non-movant contends preclude the granting of a summary judgment must be
expressly presented to the trial court by written answer or other written
response to the motion and not by mere reference to summary judgment
evidence.Â  McConnell v. Southside
School Dist., 858 S.W.2d 337, 341 (Tex. 1993).Â  Issues not expressly presented to the trial
court in writing shall not be considered on appeal as grounds for
reversal.Â  Tex. R. Civ. P. 166a(c).Â  Further, all theories in support of or in
opposition to a motion for summary judgment must be presented in writing to the
trial court.Â  Casso v. Brand, 776 S.W.2d at 553.Â 
When a summary judgment does not specify or state the grounds relied on,
the summary judgment will be affirmed on appeal if any of the grounds presented
in the motion are meritorious.Â  Western Investments, Inc. v. Urena, 162 S.W.3d 547, 550
(Tex. 2005); Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989).

Analysis

Â Â Â Â Â Â Â Â Â Â Â  As a general rule, a person who
willfully disobeys a valid court order is guilty of contempt and subject to
imprisonment for a prescribed period and until he complies with the order.Â  Ex
parte Gorena, 595 S.W.2d 841 (Tex. 1979).Â 
Relying on Ex parte Hall, 854
S.W.2d 656 (Tex. 1993), Appellant
argues she was entitled to have the merits of her case heard because the granting
of summary judgment in favor of Appellee was improper given his admission of
failure to comply with the terms of the decree by failing to pay certain
third-party debts.Â  Ex parte Hall, however, involved an order to pay spousal and child
support which is statutorily enforceable by contempt.Â  Id.
at 658.Â  An order to pay a debt, however,
is not generally enforceable through contempt because it violates Article I, Â§ 18 of the Texas Constitution's
prohibition against imprisonment for failure to pay a debt.[2]

Â Â Â Â Â Â Â Â Â Â Â  The
fact that a party to a divorce was ordered to pay an obligation owed to a
third-party, as part of the division of the community estate, does not
transform that obligation into one enforceable by coercive contempt.Â  See In
re Henry, 154 S.W.3d 594 (Tex. 2005) (husband's obligation to pay past-due
property taxes, imposed as a part of the division of community property, was an
order to pay a debt owed to a third-party and, therefore, not enforceable by
confinement for contempt because to do so would violate Article I, Â§ 18 of the
Texas Constitution's prohibition against imprisonment for failure to pay a
debt).Â  In deciding whether a spouse's
obligation to pay a third-party debt was enforceable by contempt, the Supreme
Court distinguished those situations where specific funds to pay the debt
existed, or where particular community property from which the debt was to be
paid was specified.Â  In each of those
situations, the spouse being awarded the property holds that property as a
constructive trustee for the benefit of the other spouse.Â  In such a situation, failure to surrender
that property pursuant to the divorce decree would be enforceable by contempt
because it is not considered payment of a debt.Â 
Id. at 597.Â  The surrendering spouse is not paying a debt,
but rather turning over property rightfully due another under the terms of the divorce
decree.Â  Id.

Â Â Â Â Â Â Â Â Â Â Â  In the
underlying case, the divorce decree did not specify what funds would be used to
pay the credit card debt or if funds were available to do so.Â  Without identification of existing funds,
Appellee is not a constructive trustee holding property that rightfully belongs
to Appellant.Â  Resultantly, Appellee's
obligation to make credit card payments is merely a debt owed to the credit
card companies.Â  See generally Ex parte Chacon, 607 S.W.2d 317, 319
(Tex.Civ.App.--El Paso 1980, orig. proceeding) (noting that payment of federal
taxes is in the nature of a debt owed the government).Â  The fact that the obligation was imposed
under the divorce decree does not transform the obligation into one enforceable
by contempt.Â  In re Henry, 154 S.W.3d at 597-98.Â 
We conclude that the imposition of certain credit card obligations on Appellee
in the divorce decree constitutes debts which are unenforceable by confinement
for contempt.Â  See Ex parte Chacon, 607 S.W.2d at 319 (a judgment which provides
for the payment of money to be earned in the future, rather than directing
payment of money found by the court to be in existence, is not enforceable by
contempt).

Â Â Â Â Â Â Â Â Â Â Â  Appellant
also sought a money judgment from Appellee for the unpaid balances on the
credit cards.Â  Notwithstanding that the
decree provided for indemnification, Appellant has not demonstrated she paid any
credit card debt imposed on Appellee by the decree.Â  The debts are an obligation owed to the
credit card companies and not to Appellant.Â 
See generally Rush v. Montgomery
Ward, 757 S.W.2d 521, 523 (Tex.App.--Houston [14th Dist.] 1988, writ
denied) (recognizing that Texas courts have consistently held that a division
of the community estate may not prejudice the rights of creditors to satisfy a
community debt).Â  Consequently, Appellant
was not entitled to a money judgment.Â  

Â Â Â Â Â Â Â Â Â Â Â  Appellant
also asserted by her motion for new trial that the trial court's summary
judgment did not dispose of all her claims to enforce the decree.Â  Although she sought a clarification order in
her petition for enforcement, it was conditioned upon the trial court finding
that if any part of the order sought was not specific enough to be enforced by
contempt, it be clarified.Â  The trial
court could not have made such a finding because the relief sought by Appellant
is prohibited by Article I, Â§ 18 of the Texas Constitution.Â  We conclude the trial court did not err in
granting Appellee's motion for summary judgment and overrule Appellant's sole
issue.

Â Â Â Â Â Â Â Â Â Â Â  Accordingly,
the trial court's summary judgment is affirmed.

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Patrick
A. Pirtle

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â  Justice

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â  Â Â Â Â Â Â 











[1]
A general assignment of error in granting summary judgment is permitted.Â  See
Malooly Bros., Inc. v. Napier,
461 S.W.2d 119, 121 (Tex. 1970).





[2]
Article I, Â§ 18
provides "[n]o person shall ever be imprisoned for debt."